509 So.2d 160 (1987)
STATE of Louisiana
v.
Ronald Louis MARTIN, Sr.
No. KA 86 1336-38.
Court of Appeal of Louisiana, First Circuit.
May 27, 1987.
Writ Granted September 25, 1987.
*162 Keith M. Whipple, Asst. Dist. Atty., Houma, for plaintiff and appelleeState of La.
Paul E. Brown, Indigent Defender Bd., Houma, for defendant and appelleeRonald Louis Martin, Sr.
Before SAVOIE, CRAIN and JOHN S. COVINGTON, JJ.
CRAIN, Judge.
Ronald Louis Martin, Sr., was charged by grand jury indictment with aggravated rape (La.R.S. 14:42), aggravated crime *163 against nature (La.R.S. 14:89.1), and aggravated burglary (La.R.S. 14:60). Defendant pled not guilty. Following trial by jury, he was convicted as charged on each count.[1] The trial court sentenced defendant to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence for the aggravated rape conviction. He was also sentenced to consecutive terms of fifteen years at hard labor (without benefit of parole, probation, or suspension of sentence) and thirty years at hard labor for the aggravated crime against nature and aggravated burglary convictions, respectively. From these convictions, defendant appeals urging eleven assignments of error.

FACTS
During the evening of December 16, 1983, an eighteen year old woman was brutally raped and subjected to other intimate indignities. The victim testified that she was home alone at her parents' house in Schriever when an intruder entered her bedroom. The man held a knife to the victim's throat and threatened to kill her if she failed to cooperate. After looking around the house for money and other valuables, the man made the victim submit to vaginal and oral intercourse. Immediately after the man left, the victim called her mother at work. Her parents then summoned the police. The victim gave a detailed description of her assailant to the police and noted that the man was present in her home for about one hour. A few days after the incident, Terrebonne Parish Detective Godfrey Buquet produced a composite drawing of the suspect during the course of an interview with the victim. Although the victim examined several mugshot books, she did not identify her assailant until August of 1984. At that time, Terrebonne Parish Sheriff's Deputy Robert Breaux was investigating several unsolved burglaries. During the course of that investigation, he interviewed defendant, who was then incarcerated in the Lafourche Parish Detention Center for an armed robbery violation. Detective Breaux, who was familiar with the instant case, testified that he noticed the similarity between defendant and the composite drawing. Thereafter, he prepared a photo array, which was exhibited to the victim. She immediately identified defendant as the perpetrator of these offenses.

ASSIGNMENTS OF ERROR NUMBERS ONE, TWO AND THREE
Defendant contends that the trial court erred by failing to grant his motion to suppress oral inculpatory statements and by refusing to reconsider that ruling in light of Louisiana Constitutional provisions (assignments of error numbers one and three). In addition, defendant finds error in the trial court's denial of his motion to suppress the photographic identification (assignment of error number two).

1) MOTION TO SUPPRESS ORAL INCULPATORY STATEMENTS
In July of 1984, defendant was arrested for armed robbery in Lafourche Parish. Det. Breaux interviewed defendant at the Lafourche Parish Detention Center in August of 1984. The day before the interview, Breaux met with two individuals who implicated defendant in several unsolved burglaries. At the beginning of the interview, Breaux advised defendant of his Miranda rights. Defendant waived those rights, and Breaux began questioning him about the Schriever burglaries.
During this initial encounter, Breaux noticed a strong resemblance between defendant and the composite drawing of the suspect in this case. He asked defendant if he liked girls. Breaux reasoned that if the defendant were a homosexual then he probably didn't commit the instant rape. Defendant responded by stating that he knew Breaux must be referring to the rape which occurred near Cherry's Fried Chicken. Defendant denied any involvement in that incident, but provided information that *164 he was living within one-fourth mile of the victim's home when the rape occurred. These statements were introduced during the state's case-in-chief. Defendant argues that the statements were obtained through trickery because he was led to believe that Det. Breaux would question him only about several burglaries.
At the time the question about women was asked and answered, defendant was aware of his rights. The state must prove that defendant intelligently and voluntarily waived his rights in order for a custodial statement made in response to interrogation to be admissible; we find the state has borne that burden in this case.
In proving an intelligent waiver of the rights to silence, self-incrimination, and counsel, the state need not show that defendant was aware of the full evidentiary significance of his statements. See State v. Mitchell, 421 So.2d 851 (La.1982). There is nothing to indicate that this questioning was designed to trick defendant into divulging information which he could not have known might be used against him. As the United States Supreme Court recently noted, a suspect's awareness of all the crimes about which he could be questioned is not relevant to determining the validity of a decision to waive the Fifth Amendment privilege against self-incrimination. Therefore, failure to inform a defendant of the subject matter of an interrogation could not have affected his decision to waive the privilege. See Colorado v. Spring, ___ U.S. ___, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987).
After denial of the motion to suppress, defendant sought a rehearing during which he planned to urge that the custodial statements were taken in violation of article I, section 13 of the Louisiana Constitution. This provision requires, in pertinent part, that in a criminal prosecution a defendant shall be informed of the nature and cause of the accusation against him. The defendant alleges that this provision expands the protection afforded a citizen beyond that provided by the United States Constitution.
Initially, we note that the trial court's failure to grant a rehearing was appropriate. State v. Landry, 339 So.2d 8 (La.1976), suggests that a defendant may not seek a rehearing to introduce new evidence once a trial court denies his motion to suppress. In addition, reargument and reconsideration of the motion before trial based on evidence previously introduced should be sparingly made and limited to instances wherein the trial court firmly believes that its prior decision was legally infirm. See State v. Thompson, 448 So.2d 666 (La.), reversed on other grounds sub. nom, Thompson v. Louisiana, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984); 466 So.2d 39 (La.1985).
The record reveals that when questioned by Det. Breaux, defendant was detained by Lafourche Parish authorities, having been arrested for armed robbery. In addition, at the beginning of the interview, defendant was apparently advised that he would be questioned about certain burglaries which occurred in Schriever, Louisiana. Thus, this case fell within the scope of that warning as burglary formed at least a part of the motive for the instant offenses. Additionally, the passage cited by the defendant refers to the information that must be provided in a bill of information, indictment, bill of particulars or a criminal statute and not to the information that must be provided by the police prior to questioning.

2) MOTION TO SUPPRESS PHOTOGRAPHIC IDENTIFICATION
In complaining about the photographic lineup, defendant urges that the array presented to the victim unduly focused attention on him. In particular, defendant notes the failure of the police to include photographs of two other known individuals who resembled the composite drawing.
Photographs employed in a lineup are suggestive if they display a defendant so singularly that a witness' attention is unduly focused upon the defendant. However, strict identity of physical characteristics among the persons depicted in the photo array is not required. All that is required *165 is sufficient resemblance to reasonably test identification. State v. Smith, 430 So.2d 31 (La.1983).
In this case, the victim selected defendant's picture from a photographic lineup consisting of seven photographs. We have viewed the photographs used in the lineup and do not find error in the trial court's finding that they were not suggestive. The photographs depict men with similar facial hair, facial features, skin color and complexion. Moreover, Det. Breaux testified that the victim had previously viewed and rejected photographs of the two men that defendant argued should have been included in the photo array. We do not see how including those photographs in this lineup would have benefitted defendant.
For the foregoing reasons, these assignments are without merit.

ASSIGNMENT OF ERROR NUMBER FOUR:
By this assignment, defendant submits that the trial court erred in accepting Dr. John McGee, III, the examining physician, as an expert in the field of rape examination. He argues the qualifications of the witness should not have been accepted because Dr. McGee, a family practitioner, had no prior experience in examining rape victims.
The opinions of persons having special knowledge obtained by means of special training or experience are admissible as expert testimony. La.R.S. 15:464; State v. Brown, 479 So.2d 464 (La.App. 1st Cir.1985). The test of the competence of an expert is his knowledge of the subject about which he is called upon to express an opinion. Before any witness can give evidence as an expert, his competence to so testify must have been established to the satisfaction of the court. La.R.S. 15:466. The competence of an expert witness is a question of fact to be determined within the sound discretion of the trial court. Its rulings on the qualifications of expert witnesses will not be disturbed in the absence of manifest error. State v. Watson, 449 So.2d 1321 (La.1984); cert. den., 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985).
The state presented an extensive list of Dr. McGee's qualifications. Dr. McGee had undertaken a residency in Family Practice, was board certified in that specialty, and had professional experience with female patients. Although he had not previously examined a female victim immediately after a rape, he had studied the history of female rape victims in medical school. During the predicate, Dr. McGee testified that he was confident of his professional ability to determine if objective medical evidence indicated that a rape had occurred.
We are convinced by our review of the record that Dr. McGee possessed the special training and experience required to express an expert opinion about human sexual functioning. We find no error in the trial court's acceptance of the qualifications of this witness. Accordingly, this assignment of error has no merit.

ASSIGNMENTS OF ERROR NUMBERS FIVE AND SIX:
By these assignments, defendant contends that the trial court erred by failing to grant a mistrial in response to improper statements made by the prosecutor and a defense witness. Defendant argues that these statements impermissibly referenced other crimes allegedly committed by defendant.
The prosecutor, in his opening statement, referred to the fact that Detective Robert Breaux was "working on another case" when he noted the similarity between defendant and the composite drawing of the instant perpetrator. In response to that statement defendant moved for a mistrial which was denied by the trial court. Later Detective Robert Breaux testified that he was investigating a burglary of a residence in Schriever and "felt the need to talk to" defendant. Again defendant moved for a mistrial, which was denied by the trial court.
La.C.Cr.P. art. 770 mandates a mistrial, on motion of defendant, when a remark or comment made within the hearing of the *166 jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to another crime committed or alleged to have been committed by defendant as to which evidence is not admissible. However, Det. Breaux, a police officer, is not a court official within the meaning of La.C.Cr.P. art. 770. State v. Nathan, 444 So.2d 231 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1232 (La.1984).
Mistrial is a drastic remedy and, except in instances in which mistrial is mandatory, is warranted only when a trial error results in substantial prejudice to defendant depriving him of a reasonable expectation of a fair trial. See La.C.Cr.P. arts. 771, 775; State v. Overton, 337 So.2d 1058 (La.1976).
The statements in question did not actually implicate defendant in another crime. Clearly, the jury would not give undue attention to the prosecutor's remark that Breaux, an active deputy sheriff, involved himself with investigating criminal activity. Even if reference to prior criminal acts could be inferred from Det. Breaux's remark, this technical impropriety did not result in the denial of a fair trial or warrant a mistrial. We find the trial court did not abuse its discretion in refusing to order a mistrial.
For the foregoing reasons, these assignments of error lack merit.

ASSIGNMENT OF ERROR NUMBER SEVEN:
By this assignment of error, defendant contends that the trial court erred by not allowing him to display his tatoos to the jury without being subjected to limited cross-examination.
The victim's initial description of the rapist and her testimony at trial reveal that she observed "Angela", or a name with some loops, tatooed on her assailant's right biceps. Several defense witnesses testified that none of defendant's many tatoos met the victim's description. Therefore, after the state rested, defendant asked the court's permission to display his arms to the jury. After much discussion, the trial court agreed to allow defendant to show his tatoos with the proviso that the state be allowed to cross-examine defendant as to how and when the various tatoos were placed on his body. Because of this ruling, defendant elected not to display his tatoos to the jury.
It is well settled that an identifying tatoo or scar on a defendant's body is demonstrative rather than testimonial evidence. See State v. Wilson, 329 So.2d 680 (La.1976); State v. Williams, 458 So.2d 1315 (La.App. 1st Cir.1984), writ denied, 463 So.2d 1317 (La.1985). Thus, defendant's body may be evidence when it is material. See State v. Anthony, 332 So.2d 214 (La.1976). However, the trial court is vested with wide discretion in determining the relevancy of evidence. His ruling will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. State v. Dufrene, 461 So.2d 1263 (La.App. 1st Cir.1984).
We find no abuse of discretion on the part of the trial court. Because body tatoos are subject to alteration, the trial court properly limited their display absent some foundation as to origin.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER EIGHT:
By this assignment, defendant contends that the trial court erred in allowing the state to recall the victim on rebuttal after she was released from the witness sequestration order and remained in the courtroom to hear one defense witness, Mary Martin, testify.
Over defense objection, the victim testified on rebuttal about her whereabouts after the instant attack. This testimony was offered by the state primarily to clarify the testimony of defense witness, Charles Lirette.
An order of sequestration is intended to assure that a witness will testify as to his own knowledge of the case without being influenced by the testimony of other witnesses. See State v. Nolan, 457 So.2d 1246 (La.App. 1st Cir.), writ denied, 462 So.2d 190 (La.1984); State v. Lewis, *167 367 So.2d 1155 (La.1979). On review, we look to the facts of the individual case to determine if the violation resulted in prejudice to defendant by affecting the witness' testimony or undermining the opposing party's ability to cross-examine. State v. Lewis, 367 So.2d at 1157, 1158.[2]
Mr. Lirette, defendant's uncle, testified that defendant worked with him in his plumbing business for a short time after Christmas of 1983. During this time frame, he and defendant passed the victim's home on several occasions. The defense apparently theorized this situation presented the victim with an opportunity to observe and identify defendant, if he were really the assailant. The victim's rebuttal testimony revealed that she travelled to Alabama to visit relatives a few days after the attack. In January of 1984, she returned to college in Pineville, Louisiana. Thus, she had no opportunity to view defendant walking in front of her parents' home.
Although released from the sequestration order, the victim did not hear Mr. Lirette's testimony. During the state's case-in-chief, the victim testified that she did not know her assailant. In addition, she did not return home from college until the day before the instant attack. Although Mary Martin testified that she and defendant lived near the victim for seven to nine months prior to this incident, defendant's mother, Agnes Pecos, testified that defendant and his wife lived at the Schriever address from December, 1983 to February, 1984. Thus, the rebuttal testimony added little to the case against defendant.
This assignment of error lacks merit.

ASSIGNMENTS OF ERROR NUMBERS NINE, TEN, AND ELEVEN:
Defendant argues that the state failed to prove his identity as the perpetrator of the instant offenses (assignment of error number nine). By means of assignments of error numbers ten and eleven, defendant cites the same basis as providing error from denial of his motion for post-verdict judgment of acquittal and his motion for new trial.
Where the key issue is a defendant's identity as the perpetrator, rather than whether or not the crimes were committed, the state is required to negate any reasonable probability of misidentification. State v. Richardson, 459 So.2d 31 (La.App. 1st Cir.1984). After viewing the entire record of evidence received at trial, we find that the state proved each element of the crimes, and negated any reasonable probability of misidentification beyond a reasonable doubt.
To prove that it was defendant who committed the crimes, the state presented evidence of the victim's identification of defendant in a photographic lineup and an in-court identification of defendant by the victim. Defendant attempted to rebut the evidence with alibi testimony provided by relatives and friends. However, this testimony also placed defendant in the vicinity of the victim's house near the time of these offenses.
Defendant notes that results of a scientific test, introduced by stipulation, revealed that hair samples taken from his head did not match hairs found inside a hat left at the crime scene by the rapist. However, a hat is often a shared item of apparel; and the jury apparently gave little weight to this test result.
The jury's verdict indicates that after considering the credibility of the witnesses and weighing the evidence it accepted the testimony of the victim. Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d at 38.
For the foregoing reasons, these assignments of error are without merit.
*168 CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Each crime was charged in a separate indictment. The minutes do not reflect that defendant consented to consolidation of the three charges for trial. See La.C.Cr.P. art. 706. However, defendant was not prejudiced by this action because the charges could have been properly joined in a single indictment. See La.C. Cr.P. art. 493.
[2] Overruled in part on other grounds, State v. Holden, 375 So.2d 1372 (La.1979).