558 So.2d 654 (1990)
STATE of Louisiana
v.
Ronald Louis MARTIN.
No. 89 KA 0376.
Court of Appeal of Louisiana, First Circuit.
February 21, 1990.
*656 Warren Daigle, Asst. Dist. Atty., Houma, for plaintiff and appelleeState.
Office of Indigent Defender, Houma, for defendant and appellantRonald Louis Martin, Sr.
Before CARTER, SAVOIE and ALFORD, JJ.
CARTER, Judge.
Ronald Louis Martin was separately indicted by the Terrebonne Parish Grand Jury for aggravated rape, in violation of LSA-R.S. 14:42; aggravated burglary, in violation of LSA-R.S. 14:60; and aggravated crime against nature, in violation of LSA-R.S. 14:89.1. He was tried by a jury, which convicted him as charged on each count.[1] The trial court imposed the mandatory sentence of life imprisonment, without benefit of probation, parole, or suspension of sentence, for the conviction of aggravated rape; a consecutive term of thirty years at hard labor for the conviction of aggravated burglary; and a consecutive sentence of fifteen years at hard labor, without benefit of probation, parole or suspension of sentence, for the conviction of aggravated crime against nature. Defendant appealed, urging eleven assignments of error.
These offenses occurred on December 16, 1983. Defendant was charged with the unauthorized entry of a house in Schriever, Louisiana, near a restaurant called "Cherry's Fried Chicken." After entering the house, he repeatedly raped, anally and vaginally, an eighteen-year-old girl whom *657 he found alone inside the house. He twice forced her to perform oral sex on him, the second time as he performed oral sex on her. He also forced the victim to search the house for money and for a camera, with which, he told her, he intended to take nude photographs "to remember her by." During the ordeal, he continuously threatened the victim with a large knife, at times scraping off large portions of the skin on her chest and back.
The victim described her attacker to the police, who formed a composite drawing of him and circulated it to local law enforcement agencies. In the weeks that followed, the victim was shown two sets of photographs which included possible suspects, but did not identify the rapist.
In August, 1984, Robert Breaux, then a detective with the Terrebonne Parish Sheriff's Office, received information connecting defendant to unrelated criminal activity. Prior to that time, defendant had not been connected with the rape in Schriever, and he was not questioned about his involvement in any carnal activity. However, while he was questioning defendant about that offense, Det. Breaux realized that defendant resembled the composite drawing circulated with regard to the instant offenses. He asked defendant, "Do you like girls?" Defendant responded, "I know what you're talking about, you're talking about the little girl that got raped up there in Schriever by Cherry's Fried Chicken. Well, I don't do shit like that."
As a result of this encounter, Det. Breaux compiled a photographic lineup which included defendant's likeness and showed it to the victim. She immediately identified defendant's photograph as the image of the man who had raped her.
In June, 1986, defendant was tried and convicted of these offenses. This court affirmed his convictions on appeal. State v. Martin, 509 So.2d 160 (La.App. 1st Cir. 1987). On writ of certiorari, the Louisiana Supreme Court found reversible error in the trial court's refusal to permit defendant to exhibit his tattoos to the jury without subjecting himself to cross-examination as to the origin of the tattoos and ordered a retrial. State v. Martin, 519 So.2d 87 (La. 1988).
A second trial of this matter was begun on October 11, 1988. On the third day of the trial, the court declared a mistrial after learning that one of the jurors had concealed that her sister had been raped several years before.
The third trial was begun on December 19, 1988, and the verdicts were returned three days later. Defendant now appeals these convictions.

DENIAL OF CHALLENGES FOR CAUSE
By assignment of error number one, defendant submits that the trial court erred by denying his challenges for cause of three prospective jurors, Camala Ryan, Kenneth Lirette, and Rhonda Sevin. He claims that Ms. Ryan should have been excused because she was unable to accept the presumption of the accused's innocence. He further contends that Mr. Lirette should have been excused because he was distracted by business concerns. Finally, he contends that Ms. Sevin should have been excused because she was unable to follow the court's instructions on reasonable doubt.
During the voir dire examination, defendant closely questioned Ms. Ryan with regard to her understanding of the presumption of innocence and the defendant's right to remain silent and not present a defense. Although her initial answers indicated that she believed the accused should present evidence on his own behalf, she specifically testified that she would not expect him to come forward with evidence and that she would not hold his silence against him. Thereafter, the following exchange occurred:
Q And if we sat there and produced no evidence at all, just produced no evidence at all; and yet in closing argument at the end of the case I told you there were good reasons to doubt that Mr. Martin was guilty. There were good reasons to doubt Mr. Daigle's case.
A And you would present no evidence?
Q Without evidence.

*658 A I would laugh you out of town.
Q You would automatically vote against me, would you not?
A Probably so, if you were going to sit there and tell me that, you know, I should believe this man is innocent, there's a fabulous reason why and you haven't, you know ...
The court then questioned Ms. Ryan. Throughout the colloquy, it appeared that Ms. Ryan had difficulty understanding the questions asked. Finally, the court questioned her as follows:
Q ... Do you understand the premise that the State must prove the guilt of the accused?
A Yes.
Q That the accused need prove nothing. He's an innocent man, right now, unless you're convinced to the contrary. What we want to know is are you going into this trial with your mind already made up before you hear the evidence?
A No, I'm not.
Q Okay, that's basically what its all about. Now at the end of the State's evidence and if the State has rested and this man gets up and says, Your Honor, we rest, we have no evidence to present, and at the end of the State's evidence he rests his case, if you have reasonable doubt in your mind as to the guilt of this accused, can you come back with a not guilty verdict? Because that's what the law is going to instruct you to do. Can you do that?
A Yes.
Q You see how simple that was. All right, go ahead.
An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination and to the exercise of peremptory challenges. LSA-Const. art. 1, sec. 17. The purpose of voir dire examination is to determine prospective jurors' qualifications by testing their competency and impartiality and discovering bases for the intelligent exercise of cause and peremptory challenges. State v. Burton, 464 So.2d 421 (La.App. 1st Cir.1985), writ denied, 468 So.2d 570 (La. 1985). A trial court is accorded great discretion in determining whether to seat or reject a juror for cause, and such rulings will not be disturbed unless a review of the voir dire as a whole indicates an abuse of that discretion. A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably implied. State v. Jones, 474 So.2d 919 (La.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986).
Herein, the record reflects that defense counsel's questions were not directed toward Ms. Ryan's appreciation of the presumption of innocence. Rather, counsel questioned her reaction to a closing address in which defendant would refer to information only within his personal knowledge as grounds supporting an acquittal. Her responses to the questioning of the trial court reflect that she could and did accept the presumption of defendant's innocence and his right to remain silent and not put forward a defense. Accordingly, we find no abuse of the trial court's discretion in denying defendant's challenge for cause.
Similarly, we find no abuse of discretion in the court's denial of defendant's challenges of Mr. Lirette and Ms. Sevin. Mr. Lirette testified only that he might be distracted from deliberations by pressing business and financial concerns. However, the trial court obviously concluded that Mr. Lirette's answers evidenced his willingness to be receptive to the evidence and to decide the case based on the evidence. Cf. State v. Collins, 546 So.2d 1246 (La.App. 1st Cir.1989).
The court's responses to Ms. Sevin indicate that it was of the opinion that she simply sought to be excused from jury duty. Accordingly, we find no abuse of discretion in the court's denial of defendant's challenge for cause. See State v. Vassel, 285 So.2d 221 (La.1973).
*659 Moreover, we note that a defendant must still demonstrate prejudice arising from the court's denial of a challenge for cause. State v. Burge, 498 So.2d 196 (La.App. 1st Cir.1986). The state excused Mr. Lirette by peremptory challenge. Ms. Sevin was chosen as one of two alternate jurors; however, neither alternate was called into service on the jury. Therefore, defendant has shown no prejudice arising from the court's denial of his challenges of these prospective jurors. This assignment of error has no merit.

ADMISSION OF HEARSAY EVIDENCE
In assignments of error two and three, defendant submits that the trial court erred by permitting the state to introduce hearsay evidence. By assignment of error number two, defendant complains of the trial court's ruling permitting the state to introduce the statements made by the victim to Det. Doug Modrynski, a deputy with the Terrebonne Parish Sheriff's Office. By assignment of error number three, defendant complains of the admission of a written statement taken from the victim by Det. Modrynski.
During his testimony, Det. Modrynski was asked to recount the victim's statements to him during the investigation, which he did without objection by the defense. After he related the substance of her complaint, Det. Modrynski testified that he attempted to obtain a written statement from her. The victim was shaken and upset and, therefore, was unable to write out a statement; however, she agreed to dictate a statement to him. Det. Modrynski then began to relate in court the substance of the written statement taken from the victim. Defendant objected when he began to relate the threats defendant made against the victim during the attack, claiming the statements constituted "double" hearsay. The trial court overruled the objection.
Louisiana courts have long recognized an exception to the hearsay rule allowing admission of the early complaints of rape victims. At times the courts have characterized these statements as the "first complaints of rape victims" constituting res gestae exceptions to the hearsay rule. See State v. Adams, 394 So.2d 1204 (La.1981); State v. Brown, 302 So.2d 290 (La.1974). In other cases, the courts have referred to such statements simply as "early complaints of rape victims" and ruled that they were admissible as such. See State v. Hatcher, 372 So.2d 1024 (La.1979); State v. Elzie, 351 So.2d 1174 (La.1977). When there is no unexplained lapse of time between the rape and the victim's complaint and the utterance is spontaneous, the person to whom the complaint was made is allowed to repeat the complaint in court. Statements made by a victim to police officers investigating a rape complaint, relating to events which constitute a part of the investigated offense, can constitute an admissible early complaint of a rape victim, even if the statements were made in response to police questioning. See State v. Middlebrook, 409 So.2d 588 (La.1982).
Defendant's threats toward his victim during the rape clearly constituted a part of the res gestae of the offense. The statements were related by the victim while she was still shaken and under the influence of the incident. Accordingly, we find those statements, both written and oral, were properly introduced as a part of the rape victim's early complaint.
In any event, we note that the victim also testified and related the same statements. Thus, Det. Modrynski's testimony was merely cumulative of other properly admitted evidence; therefore, any error in the introduction of his testimony was harmless. See State v. Darby, 403 So.2d 44 (La.1981), cert. denied, 454 U.S. 1152, 102 S.Ct. 1022, 71 L.Ed.2d 308 (1982).

ADMISSION OF PHOTOGRAPHIC DISPLAY
In assignment of error number four, defendant submits that the trial court erred by permitting the state to introduce a photographic lineup from which the victim chose his photograph. He submits that the lineup was suggestive, and, thus, the array should have been suppressed.
*660 Prior to the first trial, defendant filed a motion to suppress the photographic lineup, which was denied after a hearing. He claimed the lineup was suggestive because the state did not include photographs of two men who apparently resembled defendant and whose photographs the victim had closely scrutinized in two prior photographic arrays.
Initially, we note that defendant originally raised this issue during his first appeal, and his argument was found to be without merit. State v. Martin, 509 So.2d at 164-165. Defendant's claim was also reviewed by the Louisiana Supreme Court, and the court concluded that, for the reasons expressed in our opinion, the ruling of this court was correct. State v. Martin, 519 So.2d at 90. Defendant has not presented an alternative basis for this court to conclude that the lineup was suggestive. Therefore, we adhere to our earlier ruling, as follows:
Photographs employed in a lineup are suggestive if they display a defendant so singularly that a witness' attention is unduly focused upon the defendant. However, strict identity of physical characteristics among the persons depicted in the photographic array is not required. All that is required is sufficient resemblance to reasonably test identification. State v. Smith, 430 So.2d 31 (La.1983).
In this case, the victim selected defendant's picture from a photographic lineup consisting of seven photographs. We have viewed the photographs used in the lineup and do not find error in the trial court's finding that they were not suggestive. The photographs depict men with similar facial hair, facial features, skin color and complexion. Moreover, Det. Breaux testified that the victim had previously viewed and rejected photographs of the two men that defendant argued should have been included in the photo array. We do not see how including those photographs in this lineup would have benefited defendant. [509 So.2d at 164-165.]
Accordingly, we find no merit to this assignment of error.

IMPROPER MISTRIAL AND DOUBLE JEOPARDY
By assignments of error five and six, defendant submits that his convictions are invalid because he was twice placed in jeopardy for these offenses. In assignment of error number five, defendant claims that the court erred in granting a mistrial based on the misconduct of a juror. In assignment of error number six, defendant claims the court erred by denying his motion to quash based on double jeopardy.
As previously noted, the second trial of these matters ended in a mistrial after the court learned of misconduct by one of the jurors. Juror Darlene Toups revealed to another member of the panel that her younger sister had been raped several years before, although she failed to mention that incident when the panel was questioned about close friends or relatives who had been crime victims. Ms. Toups' remark was overheard by a defense witness, who informed defense counsel during the lunch break of the third day of trial. Defense counsel notified the prosecutor, who then told the court of the occurrence.
After the court was notified, it summoned Ms. LeBlanc, the witness who allegedly overheard Toups' remarks, to its chambers for an in camera hearing. According to the court's per curiam addressing this issue, both defense counsel and the state were accorded the opportunity to question the witness. Ms. LeBlanc advised the court that she overheard Ms. Toups' comment in the hallway before trial and that Ms. Toups implied that she had not notified the court during the voir dire examination because she wanted to sit on a jury to see what it was like.
Thereafter, the court returned to the courtroom, sequestered the jury panel, and invoked another hearing on the record. Under oath, Ms. Toups admitted that she had discussed the matter in the hallway before court one morning, but claimed that she had not believed the rape of her sister was important because it occurred several years before. She specifically testified that no one else was within hearing distance. *661 She further related that she told the other juror, Ms. Bonnie Lapeyrouse, "they always blame the man for it, but it's not always the man's fault." She claimed that the incident would not affect her and that she could be a fair and impartial juror.
Ms. Lapeyrouse also testified under oath. She recalled the incident, but claimed that it occurred in the jury deliberation room, rather than the hallway, and that several other jurors were present and possibly could have heard the comment. She further testified that Ms. Toups told her only that she had failed to mention that her sister had been a crime victim and had not revealed the type of crime. Ms. Lapeyrouse noted that she had not known Ms. Toups before the trial.
Based on the conflicting testimony of the two jurors, the court found that Ms. Toups must have mentioned the rape of her sister on more than one occasion in front of one or more jurors. The court further found that Ms. Toups had violated its specific instructions to refrain from discussing the case with the other jurors or with anyone else until instructed to do so. Finally, the court noted that Ms. Toups effectively gave false answers to a specific question posed by the court during voir dire. Before declaring the mistrial, the court found that she could not be rehabilitated because her sister's misfortune was obviously on her mind during voir dire and during discussions with other jurors. Addressing defendant's claim that Ms. Toups should be replaced by an alternate juror, the court further found that her actions had tainted the entire panel because her discussions had involved several members of the jury. Thereafter, over defendant's objection, the court declared a mistrial.
Defendant now submits that the mistrial was illegally declared because no legal impediment existed to the continuance of the trial and he did not consent to the mistrial. He claims, therefore, that the subsequent prosecution violated constitutional bans on double jeopardy.
A person cannot twice be put in jeopardy for the same offense. U.S. Const. Amend. 5; LSA-Const. art. 1, sec. 15; State v. Knowles, 392 So.2d 651 (La.1980). LSA-C. Cr.P. art. 591 defines double jeopardy as follows:
No person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant.
LSA-C.Cr.P. art. 775 provides that a mistrial may be ordered, and in a jury case the jury dismissed, when:
1. The defendant consents thereto;
2. The jury is unable to agree upon a verdict;
3. There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
4. The court finds that the defendant does not have the mental capacity to proceed;
5. It is physically impossible to proceed with the trial in conformity with law; or
6. False statements of a juror on voir dire prevent a fair trial.
Defendant first claims that Ms. Toups' failure to respond to the court's inquiry as to whether or not any of the veniremen had a close relative or friend who had been the victim of a crime did not constitute a false statement within the purview of this article. Defendant further claims that, even if her failure to respond could be considered a false answer, a mistrial was unwarranted because he was not prejudiced.
Although defendant failed to designate the transcript of the voir dire examination for inclusion in the appellate record, this court ordered a transcript of the voir dire of the panel of which Ms. Toups was a member. That transcript reflects that the panel was specifically questioned about whether or not a close friend or relative had been a crime victim. When questioned by the court prior to the declaration of mistrial Ms. Toups claimed that she did not think the incident involving her sister was important because it was not recent. However, *662 we note that another member of the panel, Paula Adams, revealed that her sister-in-law had been raped several years before Ms. Toups' sister. Defense counsel closely questioned Ms. Adams about the incident and ultimately excluded her by peremptory challenge. It is inconceivable that Ms. Toups could have heard the questioning of Ms. Adams and failed to realize the importance of the incident involving her sister. Thus, the court correctly concluded that Ms. Toups' action was a deliberate attempt to conceal information she knew was critical. Accordingly, in this context, we find that her failure to provide information which was specifically requested, thereby concealing a possible ground for disqualification or challenge, is equivalent to a false statement. Cf. State v. Forbes, 348 So.2d 983 (La.1977).
When false statements are made by a juror on voir dire, it is discretionary with the trial court whether or not to order a mistrial. A reviewing court will not disturb the trial court's ruling absent a clear showing of an abuse of that discretion. State v. Forbes, supra; State v. Nicholas, 312 So.2d 856 (La.1975).
The court's per curiam indicates that the court was concerned both with Ms. Toups' deliberate concealment of the incident involving her sister and with her willful disregard for the court's instructions to refrain from discussing the matter before them. The record reflects that the court repeatedly instructed the jurors that they were not to discuss the case until they were retired for final deliberations. Nevertheless, from the testimony of Ms. Lapeyrouse and Ms. Toups, as well as the in camera statements of Ms. LeBlanc (as related through the court's per curiam), it is clear that Ms. Toups deliberately violated the court's instructions not to discuss the case, and, therefore, she could not be rehabilitated as a juror. We note, as well, that despite her assurances that the incident involving her sister would not affect her deliberations, Ms. Toups' discussions about her sister's misfortune, made to a virtual stranger, indicate that the incident was directly affecting her actions during the course of the trial and, thus, affected her ability to be a fair and impartial juror.
Further, we note that the court was presented with conflicting testimony relating to the content and location of the communications between Ms. Toups and Ms. Lapeyrouse, thereby hampering its ability to discover the nature of the contact. Ms. Toups testified that she told Ms. Lapeyrouse, during a conversation with her in the hallway to which no one else was privy, that her sister had been raped and that she had told Ms. Lapeyrouse that "it's not always the man's fault." Ms. LeBlanc confirmed that Ms. Toups mentioned to another juror that her sister had been raped and that the discussion had occurred in the hallway; however, she advised the court that several other jurors were within hearing distance. Ms. Lapeyrouse specifically denied that Ms. Toups had mentioned the type of crime, and she claimed that the disclosure occurred in the jury deliberation room during the voir dire, in the presence of other selected jurors. Thus, it is clear that the court was unable to discover the extent of the taint of the jury. Moreover, the court also concluded that Ms. Toups broached the subject matter on more than one occasion in the presence of other members of the panel. In light of the divergent testimony of Ms. LeBlanc and Ms. Lapeyrouse, we find that the court's conclusion that Ms. Toups referred to her sister's rape on more than one occasion is supported by the record.
Defendant claims that the court's declaration of a mistrial was inappropriate because he was not prejudiced, citing State v. Nicholas, supra, and State v. Forbes, supra. Defendant's reliance on these cases is not well-founded. In both of those cases, the Louisiana Supreme Court reviewed the trial court's refusal to declare a mistrial based on the false statements of a juror. Neither of these cases involved the deliberate action of a juror in concealing critical information during voir dire. In State v. Nicholas, supra, two jurors failed to disclose that they were unable to read or write. However, the court found that, in this instance, their disability was insignificant because the written exhibits were read aloud during the trial. In State v. Forbes, *663 supra, a juror did not reveal that one of his sons was a city police officer and another son was a deputy sheriff, although the panel was questioned about the relationship of the prospective jurors with law enforcement officers. After the court became aware of his relationship to those officers and questioned him about his responses, the juror vehemently denied that he intentionally misled the court, stating that he might have misunderstood the question but he had told the truth. The court found that the witness had truthfully answered the question that he believed the court had asked. Since the juror's later responses revealed that he would not be influenced by his sons' employment, the court found no error in the denial of a mistrial.
In its written reasons supporting the declaration of a mistrial, the trial court noted that, at the time of Ms. Toups' selection, defendant had several peremptory challenges remaining. Therefore, her concealment of this information likely affected the makeup of the jury as a whole. Finally, although defendant claims that he was not prejudiced by the contact between Ms. Toups and Ms. Lapeyrouse, the court's inability to discern the extent of the contact by questioning the parties involved reflects that the prejudice sustained by defendant was unknown and apparently unascertainable.
Accordingly, we agree that Ms. Toups gave a false statement on voir dire which directly affected her qualifications as a juror, and her subsequent actions tainted the panel as a whole. Defendant herein was charged with a rape and was entitled to a trial by a fair and impartial jury. The trial court's action in declaring a mistrial was based upon clear evidence that one or more jurors had been tainted. Therefore, we find no abuse of discretion in the court's declaration of a mistrial. These assignments of error have no merit.

SPEEDY TRIAL
In assignment of error number seven, defendant submits that he was denied his right to a speedy trial. After the Louisiana Supreme Court ruling reversing his original conviction, defendant filed a motion for a speedy trial. On March 31, 1988, the trial court ordered that defendant be tried within one hundred and twenty days. Thereafter, on or about August 12, 1988, defendant filed a writ of habeas corpus, seeking release from his bond obligation. The court denied that motion on September 12, 1988, and fixed a trial date of October 11, 1988.
As previously noted, the trial which began in October, 1988, ended in mistrial, and the matter was rescheduled for trial beginning December 19, 1988. Defendant filed a motion to quash the prosecution based on his claim that the mistrial was illegally granted and any subsequent trial would be double jeopardy. After a hearing, the court denied defendant's motion to quash on November 23, 1988. Trial began as scheduled on December 19, 1988.
Defendant now claims he was denied his constitutional right to a speedy trial by the lengthy delay between his arrest and the instant proceedings. He claims the state willfully and deliberately failed to bring him to trial within the proper time limits.
Initially, we note that defendant failed to request a transcription of the proceedings of September 12, 1988, in which the court apparently found just cause to continue defendant's incarceration. See LSA-C. Cr.P. art. 701D(2). Nor did defendant seek supervisory relief from this court on that ruling. Accordingly, defendant has presented nothing for this court to review.
In any event, we find no merit to defendant's claim that he was denied his right to a speedy trial. The constitutional right to a speedy trial is not dependent upon a motion, but attaches when an individual becomes an accused, either by formal indictment or bill of information or by arrest and actual restraint. State v. Pleasant, 489 So.2d 1005 (La.App. 1st Cir.1986), writ denied, 493 So.2d 1218 (La.1986). In determining whether or not this constitutional right has been violated, no fixed time period is determinative. Rather, the conduct of both the prosecution and the defense are weighed in light of several factors: the *664 length of the delay, the reason for the delay, the defendant's assertion of his right, and the actual prejudice to the accused. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The peculiar circumstances of the case will determine the weight to be ascribed to the length of the delay and the reasons for the delay. State v. Reaves, 376 So.2d 136 (La. 1979).
The record does not reflect the date defendant was incarcerated, although the grand jury indictments were returned February 21, 1985. After several continuances and numerous pretrial motions, defendant was tried some fifteen months later. Much of the delay that occurred between defendant's incarceration and the instant conviction was occasioned by the events following defendant's first trial and included the time necessary for lodging and disposing of the appeal in this court and the disposition by the Louisiana Supreme Court. Although defendant argues in his brief that "the State of Louisiana continued this trial on a number of different occasions, and failed to give any oral or written reasons for the continuances," the minute entries reflect only four continuances of the trial date, three of which were requested by defendant, and all of the continuances preceded the first trial. (April 8, 1985, September 11, 1985, and December 2, 1985). Defendant was brought to trial within one year of the supreme court order granting him a new trial, as provided by LSA-C.Cr.P. art. 582. The defense was based entirely on a claim that the victim's identification was erroneous; thus, it is clear that the lengthy delay between the initiation of the proceedings and the second conviction did not prejudice the defense. Therefore, we find no merit to this assignment of error.

SUFFICIENCY OF THE EVIDENCE
In assignments of error eight, nine, and ten, defendant submits that the evidence is not sufficient to sustain the verdict. In assignment of error number eight, defendant contends the court erred by denying his motion for a new trial. In assignment of error number nine, defendant complains of the trial court's ruling denying his motion for a post-verdict judgment of acquittal. In assignment of error number ten, defendant argues that the jury's verdict was contrary to the law and the evidence.
The proper procedural vehicle for raising the issue of the sufficiency of the evidence is by a motion for a post-verdict judgment of acquittal. LSA-C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). A reviewing court must consider the evidence to determine whether or not it meets the constitutional standards of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), now codified in LSA-C.Cr.P. art. 821. The standard set forth therein is whether or not, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
During the trial, defendant emphasized to the jury several minor discrepancies in the description provided by the victim and his own appearance. Specifically, he contended that the victim described her attacker as somewhat taller than himself and that he had tattoos that were dissimilar. However, the victim's description of defendant's height and stature were generally consistent and remarkably accurate, especially in light of the ordeal to which she had been subjected. The victim further testified that defendant had a name tattooed on his forearm which contained the letters "A" "N" "E" and a letter which contained a loop. At trial, she was unable to recall whether she or the officer to whom she gave the descriptions first suggested the names "Angel" or "Angela." It is clear, however, that she did not intentionally eliminate all other possible names. Defendant bore a tattoo of the name "Marlene" on his forearm. This tattoo was displayed to the jury.
Viewing the evidence in the light most favorable to the state, we find that the evidence was sufficient to sustain the verdict. The victim accurately described her assailant, and she positively identified defendant as the perpetrator at a photographic *665 lineup and in court. A knitted cap, identified as belonging to defendant, was found on the victim's bed after the ordeal.[2] At the time of the incident, defendant lived very near. Several months later, after he was questioned about a totally unrelated incident removed from the site of the instant offenses, defendant spontaneously denied involvement in these crimes, referring to the incident with great specificity. Accordingly, we find that any rational trier of fact could have found beyond a reasonable doubt that defendant committed aggravated rape, aggravated burglary, and aggravated crime against nature. These assignments of error have no merit.

EXCESSIVE SENTENCES
In assignment of error number eleven, defendant submits that the trial court imposed excessive sentences. He does not set forth any factors in mitigation of the penalties. He claims only that the sentences "are purposeless and needless imposition of pain and suffering" and are "grossly out of proportion to the severity of the crime." Defendant especially complains that the court erred by ordering that the sentences be served consecutively.
As previously noted, defendant received the mandatory penalty of life imprisonment, without benefit of probation, parole, or suspension of sentence, for the conviction of aggravated rape; the maximum sentence of thirty years at hard labor for the conviction of aggravated burglary; and the maximum sentence of fifteen years at hard labor, without benefit of probation, parole, or suspension of sentence, for the conviction of aggravated crime against nature. The sentences are to be served consecutively.
Although concurrent sentences are the rule for offenses committed during the same transaction, consecutive sentences are not automatically considered excessive simply because they are imposed for convictions arising out of a single course of criminal conduct, since other factors should be considered in making this determination. State v. Jett, 419 So.2d 844 (La.1982). Consecutive sentences are justified when, as here, the offender poses an unusual risk to public safety. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied, 435 So.2d 433 (La.1983). The multiplicity of the acts, the nature of these offenses, and the violence displayed therein by defendant indicate dangerous propensities on his part which pose a risk to public safety. Moreover, defendant has a lengthy criminal history, dating back at least twenty years, and including numerous burglaries and other offenses indicating a complete disregard for others. The trial court has wide discretion in the imposition of sentences; and, given compliance with the sentencing criteria of LSA-C.Cr.P. art. 894.1, a sentence within statutory limits will not be set aside in the absence of an abuse of discretion. State v. Wardlow, 448 So.2d 257 (La.App. 1st Cir.1984). We find no abuse of discretion herein.

CONCLUSION
For the above reasons, defendant's convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] Because the grand jury returned separate indictments for each offense, these matters could be consolidated for trial only upon defendant's motion. See LSA-C.Cr.P. art. 706. The record does not reflect such a motion was filed herein. Nevertheless, defendant proceeded to trial on the consolidated charges without objection. In State v. Mallett, 357 So.2d 1105 (La.1978), cert. den., 439 U.S. 1074, 99 S.Ct. 848, 59 L.Ed.2d 41 (1979), the Louisiana Supreme Court noted that the prohibition against improper consolidation is grounded on possible prejudice to the accused. Therefore, improper consolidation is not a jurisdictional defect, does not constitute a denial of due process, and can be waived by the failure to object. Accordingly, we find any error in the improper consolidation of these three offenses was waived by defendant's failure to object thereto.
[2] The strands of hair found in the cap, however, did not match that of the defendant.