I1BROWN, G J.
A jury found defendant, Franklin D. Motley, guilty of second degree murder. Defendant has appealed his conviction and mandatory life sentence. We affirm.

Factual Background

On March 25, 2002, at 6:20 p.m., a Shreveport police officer responded to 503 Stoner Avenue, an abandoned house used by homeless men. The police department had received a hang-up call about a man being beaten at the Stoner address. The officer found Jerry Wyatt alive, but unconscious and badly beaten, in a front room of the house. The victim was removed to the LSU Medical Center where he later died. Wyatt, who was 45 years old and homeless, had a blood alcohol level of 0.31%. While the police were at the Stoner address, defendant came in. Defendant was taken to the police station, interviewed by detectives, and released. Also interviewed was Scott Davis, who said that he met defendant at Cascio’s, then went with him to the house on Stoner to smoke some crack. The two men found the victim and covered him with a blanket. They then smoked some crack and left. Davis was obviously intoxicated.
The following day, Davis called the police station and was again interviewed by a detective. At this time and at trial, Davis said that defendant boasted to him at Cas-cio’s about beating a man and stealing $160 to buy crack and beer. Davis went to the abandoned house with defendant and saw him kick an unconscious man on the back of the head three times. At that time, defendant told Davis, “this is the punk that I beat his ass.” Davis identified defendant from a photo lineup.
| ^Another homeless man, Bradley Watson, testified that defendant bragged to him about beating and kicking “a guy” and getting away with it. Defendant said that he had been arrested by the police but had gotten out of jail because he had only kicked the man but had not hit him with his hands. During the investigation, Watson identified defendant from a photo lineup.
Dr. George McCormick, the coroner and forensic pathologist, testified that the victim had been kicked to death. Dr. McCormick identified a shoe recovered from defendant as having the same pattern as an imprint on the victim’s face.
Defendant testified at trial. According to defendant, he had gone to the abandoned house and discovered a man lying in one of the rooms'. Defendant stated that he covered the man with a blanket and then left. Defendant testified that he didn’t know Scott Davis and denied any involvement in the killing. He likewise denied having a conversation with Bradley Watson.
Ten of the jury’s twelve members found defendant guilty of second degree murder, and as mandated by the statute, the trial judge sentenced defendant to life. Defendant has appealed his conviction and sentence.

Discussion

Defendant first asserts error in the fact that the indictment, but not his plea, was read to the jury. We note that no objection was made at trial.[1]
IsThe criminal case minutes for February 10, 2004, the date that the jury was *711 empaneled, read in part: “THE BILL OF INFORMATION AND PLEA OF THE DEFENDANT ON ARRAIGNMENT WERE READ ALOUD BY THE CLERK.” The trial transcript includes only a parenthetical notation that “(Bill of indictment read to jury).” This appears to be simply an omission on the part of the court reporter.
A defendant is not entitled to a perfect trial, only a fair one. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); State v. Strickland, 94-0025 (La.11/01/96), 683 So.2d 218; State v. Fernandez, 03-987 (La.App. 5th Cir.12/30/03), 864 So.2d 764. Even if the clerk in this case failed to read defendant’s not guilty plea to the jury, which the criminal case minutes belie, it was obvious to the jury, especially with defendant taking the stand in his own defense, that defendant’s plea was not guilty. This error, if such, is harmless. This assignment of error is without merit.
Defendant’s second assignment of error is that the jury charge was deficient because it failed to include an instruction informing the jury that the indictment was merely a document used to charge the defendant and was not itself evidence in this case.
Prior to argument, both the state and the defendant have the right to submit to the court special written charges for the jury. La. C. Cr. P. Art. 807. Article 807 further provides that a requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent and that it need not be | ¿given if it is included in the general charge or in another special charge. The record also does not reflect that defense counsel requested such an instruction or objected to the failure of the court to give this instruction.
Absent an objection during trial, a defendant may not complain on appeal of the failure to give a particular instruction. La. C. Cr. P. Art. 801(C); State v. McKinney, 39,037 (La.App.2d Cir.12/22/04), 890 So.2d 737; State v. Baker, 31,162 (La.App.2d Cir.10/28/98), 720 So.2d 767, writ denied, 99-0007 (La.04/23/99), 742 So.2d 880.
We have reviewed the court’s charge to the jury and note that the court, in its initial instructions to the jury, informed them that “the defendant in this case is presumed innocent until proven guilty. The charge against the defendant that has been brought by the State is only an accusation and nothing more. It’s not proof of guilt or anything else.” During her final charge to the jury, the judge instructed the jury that the only evidence they could consider “consists of the testimony of the witnesses, as well as any documents and exhibits which were introduced into evidence.” We find that the substance of the language that the indictment was not evidence is clearly within the ambit of the general charge given to the jury by the trial judge. See State v. Howard, 98-0064 (La.04/23/99), 751 So.2d 783, cert. denied, 528 U.S. 974, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999); State v. Sanborn, 02-257 (La.App. 5th Cir.10/16/02), 831 So.2d 320. This assignment of error is meritless.
In his third assignment of error, defendant takes issue with the following reference made by the prosecutor in his opening statement:
1 sLadies and gentlemen, I want to express at the outset my thanks for ya’ll[’s] attention thus far. And now is essentially when we begin the case. And one of the things I want to start with is one of the concepts that we went over and over and that’s the presumption of innocence. And I would tell you [that] destruction of Mr. Motley’s presumption of innocence begins now.
*712 According to defendant, this comment suggested to the jury that there was no presumption of innocence. We note, again, that this “suggestion” was not objected to at trial. Nonetheless, we will address the merits of defendant’s assignment of error at this time. In brief, the state asserts that this comment merely indicated the beginning of its proof against the presumption of innocence. Defendant’s attorney, in her opening statement, expressed her confidence that “when all the evidence is presented, that you’re going to find that the State has not met it’s (sic) burden of proof beyond a reasonable doubt.” Both parties simply expressed their belief that their evidence would prove their argument. La. C. Cr. P. art. 766 provides:
The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge.
This assignment of error is without merit.
Finally, defendant asserts that the trial court erred in allowing the prosecutor, during his cross-examination of defendant, to inquire about and have defendant display the “killer” tattoo on his arm. It is defendant’s position that he was convicted because the jury saw this inflammatory tattoo.
During the state’s cross-examination of defendant, he was asked whether he had any tattoos. Defense counsel objected that the tattoo had no relevance to the case and noted that she had not introduced any evidence of ^defendant’s character traits. Defendant displayed the tattoo and said that he got it when he was 15 years old and that he was ashamed of it. He also pointed out that it had nothing to do with his character or personality.
The court ruled that the tattoo was relevant because defendant had introduced character evidence through his employer, Gilbert Swayne, that he was an honest person, and his own testimony presenting himself as a kind person. Defendant had testified that he helped repair a van for a stranded woman and that he draped a blanket over the victim to keep him from getting cold.
 Defendant chose to testify in his own behalf. Having done so, he was subject to cross-examination on the entire case. Tattoos are admissible when relevant, i.e., when the probative value of their display to the jury is not substantially outweighed by the risk of unfair prejudice. State v. Martin, 519 So.2d 87 (La.1988), appeal after remand, 558 So.2d 654 (La.App. 1st Cir.1990), writ denied, 564 So.2d 318 (La.1990). A trial judge is vested with wide discretion in determining relevance. Id.
Although evidence is relevant, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or waste of time. La. C.E. Art. 403; State v. Ludwig, 423 So.2d 1073 (La.1982).
In the instant case, the tattoo had little relevance; however, defendant testified that the tattoo was old and that he was ashamed of it, so the jury was able to decide what weight, if any, to give to the evidence. If error, it 17was clearly harmless. We find no showing of reversible error on the trial court’s part. This assignment of error lacks merit.

Conclusion

For the reasons set forth below, defendant’s conviction and sentence are AFFIRMED.

. Notwithstanding the well-settled legal precept that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence, La. C. Cr. P. art. 841; State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333, in the interests of judicial economy, we will address the merits of this assignment of error.