559 So.2d 492 (1990)
STATE of Louisiana
v.
Rickie JONES a/k/a Billy Traylor.
No. 89-KA-689.
Court of Appeal of Louisiana, Fifth Circuit.
March 14, 1990.
Bruce G. Whittaker, Indigent Defender, Bd., Gretna, for defendant/appellant.
John M. Mamoulides, Dist. Atty., Al Donovan, Dorothy A. Pendergast, Asst. Dist. Attys., Gretna, for plaintiff/appellee.
Before KLIEBERT, WICKER and GOTHARD, JJ.
WICKER, Judge.
A Jefferson Parish bill of information was filed on September 28, 1988 charging Rickie Jones a/k/a Billy Traylor (Traylor) with a violation of L.S.A.-R.S. 14:64 in that he did, while armed with a dangerous weapon, rob Joan Ermert on September 4, 1988. The bill was amended on February *493 22, 1989 by dismissing L.S.A.-R.S. 14:64, armed robbery, and adding L.S.A.-R.S. 14:65.1, purse snatching, and L.S.A.-R.S. 14:133, filing false public records. On this same date, the latter charge, L.S.A.-R.S. 14:133, was dismissed by the State.
The case proceeded to trial, at the conclusion of which a six-person jury found Traylor guilty of purse snatching. Traylor was sentenced pursuant to L.S.A.-R.S. 15:529.1 as a second felony offender to imprisonment at hard labor for a term of thirty-five years without benefit of parole, probation, or suspension of sentence. He was given credit for time served. We affirm the conviction, vacate the sentence, and remand for resentencing.
The evidence adduced at trial set forth the following: On September 3, 1988, at approximately 10:30 p.m. Joan Ermert (Ermert) went to Bronco's, a country and western lounge located on the Westbank of Jefferson Parish. She left the lounge between 1:15 and 1:30 a.m. on September 4, 1988, and while en route to her car, she was approached by two black males subsequently identified as Billy Traylor and Royal Every (Every). Traylor ran up to Ermert and said "Give me your purse." He then grabbed her purse which contained a $10.00 bill, a make-up case, a hair pick and driver's license, and fled. The other perpetrator, Every, remained on the scene pointing a gun at the victim and telling her to stop screaming.
The victim's screams alerted Frank Tucker (Tucker) who came out from behind an air conditioning unit on which he was working. Tucker shined a flashlight on Every and asked what was going on. Every then fled the scene through a hole in the fence.
Ermert went back into Bronco's and called the police. Officer Mark Soileau of the Gretna Police Department responded to the call. After getting a description of the perpetrators from Ermert, Officer Soileau, with back-up assistance, began an investigation of the area. Shortly thereafter, the officers observed and stopped two black males fitting the description of the perpetrators. A pat down search was conducted leading to the retrieval of a ten dollar bill from Traylor's pocket.
Ermert was brought to the scene of the stop where she immediately identified Traylor and Every as the perpetrators of the crime. Despite Traylor's testimony that he did not take the ten dollar bill or any other property from Ermert, the jury found Traylor guilty of purse snatching.
Traylor now assigns two errors:
1) The trial court erred in failing to compel appellant's co-defendant to testify in response to appellant's counsel's questions.
2) The trial court imposed an excessive and apparently vindictive sentence.
As his first assigned error, Traylor alleges that the trial court erred in failing to compel Every, a co-defendant, to testify in response to defense counsel's questions.
At trial the State called Every, a co-defendant, to testify. At the time of trial, Every had already pled guilty and had been sentenced on the charges against him. Every chose not to answer the State's questions regarding the incident on September 4, 1988, but rather chose to invoke his Fifth Amendment privilege against self-incrimination. Every again invoked his Fifth Amendment privilege when defense counsel, who had also subpoenaed him, attempted to ask him questions. A stand-in attorney for Every then advised the court:
MS. KIFF:
As long as Mr. Every is on the stand this date without his regular attorney, who knows all the facts and circumstances of this case, and since I've just been introduced to Mr. Every not more than five minutes ago before he took the stand, once again, I advised Mr. Every to take the Fifth. I do not know the facts of this case. I do not know the DA's position or Defense's position; I only know that I am here to advise Mr. Every that without better counsel and his regular counsel, I will have to advise him to take the Fifth on each and every question. If you ask him the time of the day, I will advise him to take the Fifth again.
THE COURT:

*494 So he's not going to answer any questions for the State or the Defense?
MS. KIFF:
I've advised him not to.
THE COURT:
All right. Is this correct?
THE WITNESS:
Yes, sir.
THE COURT:
It's quite evident that he's not going to testify for either side.
Okay. You can step down.
Traylor's attorney then moved for a mistrial outside the presence of the jury alleging that it was prejudicial to his client to have Every invoke his Fifth Amendment privilege in front of the jury. The trial judge denied Traylor's motion for a mistrial, stating:
For the record, he was called by each party, the Defense and the State, as a witness. And no one knew whether he was going to testify, what he was going to say. He was just called.
The Fifth Amendment to the United States Constitution, made applicable to the states in Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) provides, in pertinent part, that "No person ... shall be compelled in any criminal case to be a witness against himself." In addition, the La. Const. of 1974, Article I, Section 16, states that "No person shall be compelled to give evidence against himself."
In addressing the issue of whether it is permissible to allow a witness to assert his Fifth Amendment privilege in the presence of the jury, the Louisiana Supreme Court, in State v. Berry, 324 So.2d 822 (La.1975), cert. denied, Berry v. Louisiana, 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976), stated:
It is improper conduct for either the prosecution or the defense knowingly to call a witness who will claim a privilege, for the purpose of impressing upon the jury the fact of the claim of privilege. American Bar Association Standards of Criminal Justice, Relating to the Prosecution Function, Standard 5.7(c), and Relating to the Defense Function, Standard 7.6(c) (1971).
As the commentaries to these standards indicate, claims of privilege are preferably determined outside the presence of the jury, since undue weight may be given by a jury to the claim of privilege and due to the impossibility of cross-examination as to its assertion. (The commentaries also note the impropriety of either counsel arguing any inference from the failure of another to call a witness, if the failure to do so is known to be based on the witness's claim of privilege). For similar reasons, the courts have uniformly rejected a defendant's claim of error based upon the denial of his request that a witness assert his claim of privilege before the jury. See United States v. Lacouture, 495 F.2d 1237 (CA 5, 1974), and decisions therein cited. See also Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963).
Supra at 830.
The Louisiana Supreme Court has held that when the State knows that a witness will exercise a valid privilege, it is reversible error to require the witness to exercise his privilege in front of the jury. State v. Day, 400 So.2d 622 (La.1981). However, a judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect the substantial rights of the accused. L.S.A.-C.Cr.P. Art. 921.
Although it was error to allow Every to invoke his Fifth Amendment privilege in the presence of the jury, such error can be deemed harmless under the circumstances of this case. Both the prosecutor and the defense counsel planned to call Every as a witness. Therefore, no inference could be drawn in favor of either the State or the defense as to what his testimony might be. Moreover, the prosecutor, in his opening statement, did not mention his intent to call Every as a witness but merely summarized the facts which he intended to prove at trial, including Every's participation in the offense. In fact, it was defense counsel who made reference in his *495 opening statement as to what Every's proposed testimony would be. Additionally, it is noted that Traylor's attorney did not request that the jury be removed from the room prior to the questioning of Every. Given these circumstances, the error, if any, in allowing Every to invoke his Fifth Amendment privilege in the presence of the jury can be deemed harmless.
In addition to alleging that it was prejudicial to have Every invoke his Fifth Amendment privilege in front of the jury, Traylor also alleges as part of this assigned error that the trial judge erred in allowing Every to escape testifying by a general invocation of the privilege against self-incrimination.
It is not necessary for a witness charged with participating in the same crime for which the defendant is being tried to assert the privilege on a question by question basis when it is apparent that the witness will be asked to testify only regarding matters which could be expected to require the invocation of the privilege. State v. Brown, 514 So.2d 99 (La.1987), cert. denied, Brown v. Louisiana, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988), rehearing denied, 487 U.S. 1228, 108 S.Ct. 2888, 101 L.Ed.2d 923 (1988). Thus, it was not error for the trial judge to allow a blanket assertion of Every's Fifth Amendment privilege where Every was charged with participation in the same crime as the individual on trial and it was apparent that the questioning would be devoted to subject matter which would require Every to invoke the privilege.
Accordingly, this assignment lacks merit.
As his second assigned error, Traylor argues the sentence imposed was excessive and vindictive. Traylor was convicted of purse snatching and was sentenced as a second felony offender to 35 years at hard labor without benefit of parole, probation or suspension of sentence. Whoever commits the crime of purse snatching shall be imprisoned, with or without hard labor, for not less than two years and for not more than twenty years, L.S.A.-R.S. 14:65.1.
Traylor was sentenced as a second felony offender pursuant to the habitual offender statute, L.S.A.-R.S. 15:529.1, which provides for punishment, in pertinent part, as follows:
A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government or country of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(1) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-third the longest term and not more than twice the longest term prescribed for a first conviction[;]
Thus, Traylor was facing a minimum sentence of 6 2/3 years and a maximum sentence of 40 years. He was sentenced to imprisonment at hard labor for a term of thirty-five years without benefit of parole, probation, or suspension of sentence and now claims that this sentence was excessive and vindictive.
The courts are prohibited from imposing cruel, excessive, or unusual punishment by Article I, Section 20 of the Louisiana Constitution of 1974. Sentences which are "grossly out of proportion to the severity of the crime" or "nothing more than the purposeless and needless imposition of pain and suffering" are excessive. State v. Brogdon, 457 So.2d 616, 625 (La.1984), cert. denied, Brodgon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Studivant, 531 So.2d 539 (La.App. 5th Cir.1988). Even sentences which are within statutory limits may violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tyler, 524 So.2d 239 (La.App. 5th Cir. 1988).
In sentencing a defendant, a court must consider the guidelines articulated in L.S. A.-C.Cr.P. Art. 894.1. The purpose of this article is twofold: "(1) to guide and assist *496 the trial judge in the exercise of his or her broad discretion in imposing sentence; and (2) to afford the reviewing court with insight so that the propriety of the sentence can be evaluated." State v. Butler, 450 So.2d 764, 766 (La.App. 5th Cir.1984). Although the sentencing judge need not articulate every factor set forth in Article 894.1, the record must show that he adequately considered the guidelines in particularizing the penalty to the individual defendant. State v. Davis, 448 So.2d 645 (La.1984); State v. Studivant, supra.
In discussing elements which should be considered before imposing sentence, the Louisiana Supreme Court, in State v. Soco, 441 So.2d 719, 720 (La.1983), appeal after remand, 508 So.2d 915 (La.App. 4th Cir. 1987) stated:
While the trial judge need not recite the entire article 894.1 checklist of aggravating and mitigating factors, the record must reflect that the judge adequately considered the guidelines. State v. Quebedeaux, supra [424 So.2d 1009 (La.1982)]; State v. Trahan, 412 So.2d 1294, 1296 (La.1982). Important elements which must be considered are the convict's personal history (age, family ties, marital status, health, employment record), prior criminal record or absence thereof, seriousness of the particular offense, and the likelihood of recidivism or rehabilitation. State v. Quebedeaux, supra; State v. Trahan, supra. Further the judge must state for the record the factual basis therefor. C.Cr.P. 894.1(C); State v. Jones, 398 So.2d 1049, 1052 (La. 1981). The judge must, in effect, justify his sentence with factual reasons.
The law is well settled that a remand for resentencing will be necessary when L.S. A.-C.Cr.P. Article 894.1 has not been adequately complied with and when there is a serious lack of evidence to support the sentence imposed in relation to the particular offense committed. State v. Sosa, 537 So.2d 873 (La.App. 5th Cir.1989).
In imposing sentence on Traylor, the trial judge stated:
The Court is going to sentence the Defendant to thirty-five years at hard labor. And this is without benefit of parole, probation or suspension of sentence.
The reason I'm sentencing him to jail time with the Louisiana Department of Corrections is that I think there's an undue risk that during the period of a suspended sentence, any type of probation, the Defendant would commit another crime, which he has shown in the past. He was convicted of armed robbery and had just got out and was convicted of another crime. The Defendant is in need of correctional treatment and a custodial environment, which would be most effectively done by committing him to an institution. And I think a lesser sentence would deprecate the seriousness of the defendant's crime that he committed.
We find that the trial judge did not adequately comply with the sentencing guidelines of L.S.A.-C.Cr.P. Article 894.1. Absent such compliance, we lack appropriate criteria by which to measure whether this sentence is excessive in relation to this particular defendant. Therefore, while we are not at this point saying that the sentence imposed was excessive, we find it necessary to vacate Traylor's sentence and remand the case to the trial court with instructions to more completely articulate the factual reasons, in accordance with L.S. A.-C.Cr.P. Article 894.1, for the imposition of this particular sentence upon this particular defendant.
In accord with the views expressed herein, see State v. Sosa, supra, where this Court vacated defendant's sentence and remanded the matter to the trial court with instructions for it to properly consider the sentencing guidelines of L.S.A.-C.Cr.P. Article 894.1, thereby providing the reviewing court with criteria by which to measure the excessiveness of the sentence in relation to the particular defendant.
Because we vacate the sentence and remand for resentencing, it is not necessary at this time to address Traylor's claim that the sentence imposed was vindictive.
We have also reviewed the record for errors patent, and in so doing, we have found an error in the sentence imposed. Traylor's sentence was imposed without the benefit of parole, probation, or suspension of sentence. This sentence is illegal insofar as it denies Traylor the possibility *497 of parole. According to L.S.A.-R.S. 15:529.1(G), any sentence imposed under the provisions of this section, that being the multiple offender statute, shall be without benefit of probation or suspension of sentence. L.S.A.-R.S. 15:574.4(A)(1) provides in pertinent part that "A person, otherwise eligible for parole ... upon conviction of a second felony ... shall be eligible for parole consideration upon serving one-half of the sentence imposed." Reading these statutes in conjunction with each other, Traylor is eligible for parole consideration upon serving one-half of the sentence imposed. We note this error in order that it may be corrected in the resentencing proceedings.
Accordingly, we affirm Traylor's conviction but vacate his sentence and remand the matter to the trial court with instructions to adequately consider the sentencing guidelines of L.S.A.-C.Cr.P. Art. 894.1.
CONVICTION AFFIRMED, SENTENCE VACATED, CASE REMANDED FOR RESENTENCING.