631 So.2d 1195 (1994)
STATE of Louisiana
v.
John KENNEDY.
No. 93-KA-776.
Court of Appeal of Louisiana, Fifth Circuit.
January 25, 1994.
*1196 John M. Mamoulides, Dist. Atty., Dorothy Pendergast, Asst. Dist. Atty., Gretna, for plaintiff-appellee.
Bruce G. Whittaker, Indigent Defender Bd., Gretna, for defendant-appellant.
Before DUFRESNE, WICKER and GOTHARD, JJ.
DUFRESNE, Judge.
The defendant, John Kennedy was charged by Bill of Information with six counts of armed robbery, LSA-R.S. 14:64, and two counts of attempted armed robbery, LSA-R.S. 14:27 and 14:64. At the April 26, 1993, arraignment, defendant pled not guilty and not guilty by reason of insanity.
The court conducted a sanity hearing on May 27, 1993, and June 24, 1993. After considering expert psychiatric testimony, the trial judge concluded that defendant was mentally competent to stand trial. Prior to trial, the defendant withdrew his plea of not guilty by reason of insanity.
The matter proceeded to trial on all eight counts on July 13, 14, 15, and 16, 1993. Following presentation of the evidence, the jury found defendant guilty as charged on all eight counts.
On July 21, 1993, the judge sentenced defendant to fifty years at hard labor on each of the six armed robbery convictions, and twenty-five years at hard labor on each of the two attempted armed robbery convictions, all counts to run consecutively and without benefit of parole, probation or suspension.
Defendant thereafter filed a Motion for Appeal.

FACTS
The eight counts charged in the bill of information arise out of four separate incidents. The facts surrounding each incident will now be individually discussed, as well as the facts leading to defendant's apprehension and arrest.

FACTS SURROUNDING COUNTS SIX AND SEVEN
On December 10, 1992, Ethelene Stone and James Vance of Mississippi, were visiting the New Orleans area because Mr. Vance was scheduled to have back surgery at Ochsner. After shopping at Lakeside Mall on the night of December 10th, they went to Chesterfield's nightclub and then proceeded to the nearby Bennigan's for a cup of coffee at approximately 11:00 p.m. As they walked across the parking lot, a car sped up behind them and stopped. The passenger, armed with a sawed off shotgun jumped out of the vehicle, and demanded Ms. Stone's purse and Mr. Vance's billfold. Ms. Stone threw defendant her purse, which contained a good bit of jewelry, and stepped back as far as she could. Mr. Vance was not robbed of anything because he told the perpetrator that he did not have a wallet. After the armed robber grabbed Ms. Stone's purse, he jumped in the car and fled. Ms. Stone was unable to make a positive identification of her assailant; however, she identified a shotgun at trial as similar to the one used in the robbery. She also identified photographs of an automobile as similar to the one used in the robbery. Additionally, she identified pictures of some of the property stolen from her purse.
In addition to corroborating Ms. Stone's testimony, Mr. Vance testified that during the whole incident, he kept looking at the perpetrator's face, gun barrel and license plate number. He positively identified defendant in the courtroom as the perpetrator. In addition, Vance was shown a photographic line-up on December 30, 1992, by Detective Murray Roark of the Baldwin County Sheriff's Office. Vance immediately made a positive identification of defendant in the photographic line-up. Both at trial and when Detective Roark went to his house to conduct *1197 the photographic line-up, Vance identified photographs of the vehicle as similar to the one used in the robbery. He additionally identified the gun as similar to the one used in the robbery.

FACTS SURROUNDING COUNT ONE
On December 12, 1992, while David Fassnacht was in the driveway of his former Metairie residence, he noticed a silver/gray sports coupe turn onto his street. The driver of the vehicle rolled down his window and called Fassnacht over to ask him for some directions. As Fassnacht gave the driver directions, the passenger exited the vehicle, went around the back of the car, pointed a shotgun at Fassnacht and demanded his wallet and watch. After he surrendered his wallet, which contained several credit cards and approximately $85.00 cash, and watch, defendant told Fassnacht to turn around and walk towards the house. Fassnacht took about five steps when he heard the car drive off. He then turned around to get another look at the car. A few days later, Sergeant Toca of the Jefferson Parish Sheriff's Office showed this victim a photographic line-up. Fassnacht made a positive identification of defendant as the perpetrator both in the photographic line-up and at trial. During trial, Mr. Fassnacht also identified a shotgun and photographs of a vehicle as similar to those used in the robbery.

FACTS SURROUNDING COUNT EIGHT
On December 12, 1992, at about 6:30 a.m., as Robert Noote was leaving his residence in Metairie, a car approached him and the driver of that vehicle asked him for directions to a certain street. As he talked to the driver, the passenger exited the car, walked around the back of the car and approached Noote. The passenger pointed a sawed off shotgun at Noote and demanded all his money. After Noote gave him the money that he had, approximately $26.00, the assailant told the victim to turn around and not look at him. The passenger got back into the car and the perpetrators fled.
The police subsequently went to his house to conduct a photographic line-up; however, when he told the officer that he had seen the perpetrator's picture in the newspaper, the officer opted not to do a photographic line-up. However, Noote identified defendant in court as the robber. He also identified a gun and photographs of a vehicle as similar to those used in the robbery.

FACTS SURROUNDING COUNTS TWO, THREE, FOUR AND FIVE
On December 12, 1992, Gary Raphael, his wife, Linda, and another couple, David and Melba Bruce, were going together to a Christmas party at a friend's house in their Metairie neighborhood. After Gary Raphael parked his car, his wife, Linda, and Melba and David Bruce walked up on the sidewalk while Gary Raphael went to the trunk of the car to get a casserole that his wife had made. As he opened the trunk, he heard a car pull up alongside him. A few seconds later, he heard a voice from behind demand their wallets and purses. Gary Raphael put his hands in the air, turned around and saw defendant armed with a shotgun. Gary Raphael and David Bruce surrendered their wallets and Linda Raphael threw her purse on the ground. Melba Bruce did not give defendant anything because she was not carrying a purse. Defendant took the two wallets and the purse and fled.
Subsequent to the robbery, Gary Raphael, Linda Raphael and David Bruce went to Jefferson Parish Correctional Center for a physical line-up. All three of these victims made a positive identification of defendant, both at the physical line-up and in court, as the perpetrator. Mrs. Melba Bruce made a positive identification of defendant only at trial, as she did not participate in any pretrial identification procedures. Each of these four victims identified the gun in court as being similar to the one used in the robbery. With regard to the photographs of the vehicle, Gary and Linda Raphael and David Bruce were able to identify them as similar to the one the perpetrator was in; however, Melba Bruce testified that she did not get a good look at the vehicle.

FACTS SURROUNDING DEFENDANT'S ARREST
Approximately two days after the robbery, the police stopped a vehicle which matched the description given by the victims and the partial license plate number given by Mr. *1198 Vance. Several people were inside the vehicle, including defendant, Gregory Griggs, Precious DeClouot, David Williams, and Monique Clark. As Detective Sergeant Glen Toca of the Jefferson Parish Sheriff's Office talked to Precious DeClouot, he noticed that she had several rings on her fingers, which matched the description of some of the property that had been stolen from Ms. Stone. In addition, David Williams had a watch on his arm that was later determined to belong to another victim, David Fassnacht.
The individuals that were stopped were brought to the detective bureau for questioning. After interviewing them, Detective Toca instructed Sergeant Fred Hebert to proceed to a residence in Orleans Parish, 4930 America Street, to conduct a search of the premises to look for the possible weapon used in the robberies. As a result of this search, the officers seized a twelve gauge pump shotgun, some ammunition, and a photograph of defendant. Detective Sergeant Toca also instructed Lieutenant Susan Rushing and Sergeant Norman Schultz to search the apartment of Gregory Griggs and Precious DeClouot, located at 2301 Houma Boulevard, Apartment 16. As a result of this consent search, the officers recovered a container with several jewelry items, a photograph of John Kennedy and a female, and a pair of pants which contained a check cashing card for defendant.
Following numerous positive identifications of defendant as the perpetrator by the victims, defendant was charged with these crimes.

ASSIGNMENT OF ERROR NUMBER ONE
The trial judge erred in refusing appellant's request to approach the jury so that they might better examine his facial features and body type in order to weigh the testimony of the identification witnesses.

DISCUSSION
In the present case, after defense counsel presented his case, he requested that defendant be allowed to approach the jury so that they could have a good look at him and compare his actual features with those described by the victims. The trial judge denied this request, noting that defendant had been standing all the time. Defendant now contends that the denial of this request unconstitutionally hampered his ability to present his defense of misidentification, especially in light of the fact that the victims gave varying descriptions of the defendant, with none describing their assailant as having a noticeable scar on his face near the temple.
The State, in contrast, argues that the trial judge was correct in denying defense counsel's request to allow the accused to approach the jury, as defendant had been standing not far from that body all the time. In the alternative, the State argues that any error which may have occurred was harmless beyond a reasonable doubt under LSA-C.Cr.P. art. 921.
LSA-C.E. art. 402 provides that "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence which is not relevant is not admissible." "Relevant evidence" is defined in LSA-C.E. art. 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Although evidence is relevant, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. LSA-C.E. art. 403. See also State v. Ludwig, 423 So.2d 1073 (La. 1982).
It is well settled that the requirement of exhibiting identifying characteristics is demonstrative, rather than testimonial evidence, and is not violative of the Fifth Amendment right against compulsory selfincrimination. State v. Martin, 519 So.2d 87 (La.1988) appeal after remand, 558 So.2d 654 (La.App. 1st Cir.1990), writ denied, 564 So.2d 318 (La.1990); State v. Gilmer, 604 So.2d 117 (La.App. 2nd Cir.1992).
The use of demonstrative evidence is within the sound discretion of the trial judge and his ruling will not be disturbed on appeal *1199 in the absence of an abuse of discretion. State v. Alexander, 602 So.2d 291 (La.App. 2nd Cir.1992). See also State v. Barnes, 489 So.2d 402 (La.App. 5th Cir.1986), writ denied, 494 So.2d 1174 (La.1986).
In State v. Martin, supra, defendant was charged with aggravated rape, aggravated crime against nature and aggravated burglary. At trial, the primary issue was the identification of defendant as the rapist. The victim testified that the man who attacked her had a tattoo on his right upper arm which "said something like `Angela,'" and "had some loops in it." In response to this testimony, the defendant asked to be permitted to display his arms to the jury, for the apparent purpose of demonstrating that he did not have a tattoo which matched the victim's description, but that he did have noticeable tattoos on his arms of a type that had not been observed by the victim on her assailant. The trial judge ruled that defendant could display his arms to the jury, but that the state would then be allowed to crossexamine him on the origin of the tattoos and whether he ever had any tattoos removed. The defense attorney then chose not to have his client display his arms to the jury. At the conclusion of trial, defendant was found guilty on all three counts. On appeal, defendant's convictions were affirmed, State v. Martin, 509 So.2d 160 (La.App. 1st Cir.1987). On writ of review, (519 So.2d 87), the Louisiana Supreme Court reversed defendant's convictions and remanded the matter for retrial concluding that the trial court committed prejudicial error by ruling that defendant could not display his arms to the jury without submitting himself to cross-examination. The Supreme Court reasoned that since the state may compel defendant to display a physical characteristic to the jury without violating his Fifth Amendment privilege against self-incrimination, the defendant was therefore entitled to show his tattoos or lack of them in trial where such display was material, without any cross-examination as to tattoo's origin. The court further concluded that since the proposed tattoo evidence was directly relevant and material to the primary issue of identity, the erroneous exclusion of the evidence could not be deemed harmless.
In contrast to State v. Martin, supra, this court in State v. Barnes, supra, when presented with a different factual scenario, concluded that the trial court did not err in refusing to allow defendant to display or describe her wounds to the jury that would corroborate her testimony that she acted under compulsion of threats by her deceased husband. In affirming the trial court's ruling on this issue, this court stated:
Although it might be viewed as technically "relevant" evidence under Ludwig, demonstrative evidence in the form of scars from earlier incidents could also be properly excluded under the reasoning of the very same case (see second quoted paragraph of Ludwig above). Further, it appears that the defendant did point out several scars from injuries allegedly inflicted by her deceased husband (Vol. I, Tr. p. 64) and in regard to the scars from the alleged gunshot wounds, the prosecutor stipulated "there are maybe four bullet holes which produce four scars." (Vol. I, Tr. p. 61). More importantly, the defendant and her daughter were allowed to testify fully about the deceased's alleged prior violent acts against the person of the defendant. This testimony was the critical evidence, for the scars themselves gave no indication as to who inflicted the wounds and under what circumstances. If the jury was not persuaded by corroborated defense testimony as to how the scars were incurred, it apparently would not have rendered a different verdict even had it seen all of the scars. The scars themselves were of little evidentiary value unless a casual connection was established, and the jury apparently rejected defense testimony on the issue, for it returned a verdict of guilty, thereby rejecting defendant's justification defense.
* * * * * *
Considering all of the above, we hold that the trial judge's ruling on the admissibility of the proffered evidence was correct under Ludwig, supra, and, even if erroneous, was harmless error beyond a reasonable doubt under Gibson, supra, and Martin, supra. We further hold that the defendant failed to meet her burden of proof as *1200 to the defense of compulsion and we find no error in the jury's verdict.

State v. Barnes, supra at pp. 406-407.
The present case is somewhat different than the ones previously cited. In those cases, the identifying characteristics of the accused were not visible to the jury; however, in this case, the scar, located above defendant's eye, was visible to the jury at all times. Defendant was either seated or standing at the defense table at all times during trial. Moreover, defense counsel thoroughly cross-examined all the witnesses about any discrepancies in the identification, including whether or not they had observed a scar on defendant which was not very noticeable. The trial judge did not err in the present case because defendant was allowed to exhibit his scar to the jury although he was not allowed to physically approach the jury.
Based on the foregoing discussion, this assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
The trial court imposed an excessive sentence.

DISCUSSION
In the present case, defendant was convicted of six counts of armed robbery and two counts of attempted armed robbery. LSA-R.S. 14:64 provides that "whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence." The penalty provision for an attempted offense is contained in LSA-R.S. 14:27 D, which reads, in part, as follows: "In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both."
At the July 21, 1993, sentencing proceedings, the trial judge sentenced defendant as follows:
Mr. Kennedy, you have created a reign of terror on the street. You had a gun, and I believe you would have killed somebody if the occasion would arise. I am going to give you half of the mandatory maximum in connection with this matter.
On the six counts of armed robbery you're sentenced to 50 years on each count, consecutive for a total of 300 years.
On the attempt armed robberies, 25 on each one for a total of 50 years there consecutive.
A total of 350 years to be served without benefit of parole, probation or suspension of sentence. You are remanded to the sheriff for execution of sentence.
After the imposition of sentence, defense counsel made an oral motion to reconsider sentence on the ground that it was excessive and the court failed to take into account the Louisiana Sentencing Guidelines prescribed in LSA-C.Cr.P. art. 894.1.
The court considered defendant's motion and stated as follows:
The Court considered the guidelines and the sentencing guidelines, feels they are discretionary, advisable. The Court has given the basis for its ruling, but still notes the objection of defense.
* * * * * *
At this time the sentence is maintained. Again I will add for the record that the defendant placed the victims in jeopardy of losing their lives. I don't think half of the time is excessive, but still note the objection.
On August 2, 1993, defense counsel supplemented the previous oral motion with a written motion to reconsider sentence. The trial judge denied the motion on September 23, 1993.
Defendant now contends that the sentences imposed were excessive. He specifically argues that "in imposing eight substantial consecutive sentences, the trial judge failed to articulate any particular justification for ordering such a grave sentence."
In State v. Jones, 559 So.2d 492, 495 (La. App. 5th Cir.1990), writ denied, 566 So.2d *1201 981 (La.1990), this Court stated the following regarding excessive sentences:
The courts are prohibited from imposing cruel, excessive, or unusual punishment by Article I, Section 20 of the Louisiana Constitution of 1974. Sentences which are "grossly out of proportion to the severity of the crime" or "nothing more than the purposeless and needless imposition of pain and suffering" are excessive. State v. Brogdon, 457 So.2d 616, 625 (La.1984), cert. denied, Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Studivant, 531 So.2d 539 (La.App. 5th Cir.1988). Even sentences where are within statutory limits may violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tyler, 524 So.2d 239 (La.App. 5th Cir. 1988).
In reviewing a sentence for excessiveness this court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing sentence. A sentence within statutory limits will not be set aside as excessive absent a manifest abuse of discretion. State v. Davis, 449 So.2d 452 (La.1984); State v. Lynch, 512 So.2d 1214 (La.App. 5th Cir.1987).
The court should consider three factors in reviewing a judge's sentencing discretion 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Telsee, 425 So.2d 1251 (La.1983); State v. Smith 520 So.2d 1252 (La.App. 5th Cir.1988), writ denied, 523 So.2d 1320 (La.1988). When the defendant has been convicted of a felony, the court shall consider the sentencing guidelines promulgated by the Louisiana Sentencing Commission in determining the appropriate sentence to be imposed. However, no sentence shall be declared unlawful, inadequate, or excessive solely due to the failure of the court to impose a sentence in conformity with the sentencing guidelines of the commission. See LSA-C.Cr.P. art. 894.1 A and art. 881.6.
LSA-C.Cr.P. art. 881.4 D further provides that the appellate court shall not set aside a sentence for failure to impose a sentence in conformity with the sentencing guidelines or for excessiveness if the record supports the sentence imposed.
The Louisiana Supreme Court recently issued an opinion addressing to what extent sentencing judges are compelled to follow the Louisiana Sentencing Guidelines. See State v. Smith, 629 So.2d 333 (1993). The Louisiana Supreme Court basically held that the Guidelines are mandatory, but only in the sense that the trial court must consider them and, if gross deviation is called for, must state for the record the reasons for departure which shall specify the mitigating or aggravating circumstances, and the factual basis therefor. The Supreme Court then held that the Guidelines are also advisory, but only in the sense that a judge is not compelled to follow them if a sentence outside the Guidelines is supported by aggravating or mitigating circumstances in the record.
There are several cases from this court which address the guidelines, but which were decided prior to the Louisiana Supreme Court decision in State v. Smith, discussed supra.
In State v. Orgeron, 620 So.2d 312 (La. App. 5th Cir.1993), this court agreed with the premise in the Fourth Circuit opinion of State v. Smith, supra, but then held that the deviations in that case were supported by the record.
In State v. Conrad, 620 So.2d 366 (La.App. 5th Cir.1993), this court did not set aside defendant's 49 ½ year sentence at hard labor, even though trial judge may not have followed sentencing guidelines, where sentence was not excessive and record supported sentence imposed. See also State v. Hill, 628 So.2d 108 (La.App. 5th Cir.1993) which discusses the sentencing guidelines and departures therefrom.
With regard to defendant's argument about the excessiveness of the consecutive *1202 sentences, LSA-C.Cr.P. art. 883 reads as follows:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently. Amended by Acts 1977, No. 397, § 1.

In addition, La.Adm.Code tit. 22, § 215 A sets forth factors for the court to consider in deciding whether to impose concurrent or consecutive sentences and reads as follows:
A. Factors to be Considered
1. The sentencing court may impose either concurrent or consecutive sentences in cases where a defendant has been convicted of two or more offenses. In determining whether to impose either a concurrent or a consecutive sentence, the court should consider aggravating and mitigating circumstances which may be present.
2. If two or more criminal acts are based on the same act or transaction, or constitute parts of a common scheme or plan, concurrent sentences should be imposed.
3. In all other cases, concurrent or consecutive sentences should be supported by appropriate factors. If a consecutive sentence is imposed, the court shall state for the record the factors considered and the reasons for imposition of a consecutive sentence.
4. If statutory law requires that a sentence be imposed either concurrently or consecutively, the sentences must be imposed in the manner prescribed by law.
See also La.Adm.Code tit. 22 § 215 C which sets forth the procedure for imposing consecutive sentences.
In State v. Duvio, 511 So.2d 821 (La.App. 5th Cir.1987), defendant was convicted of five counts of armed robbery and was sentenced to serve thirty years on each count to run consecutively. In Duvio, the court discussed the authority of the trial judge to impose consecutive sentences as follows:
Pursuant to LSA C.Cr.P. art. 883, the sentencing judge may use his authority to impose either concurrent or consecutive sentences when a defendant is convicted of two or more offenses based on the same act or transaction or constituting parts of a common scheme or plan.
As a general rule, sentences served for crimes arising out of a single course of conduct are served concurrently instead of consecutively. However, Louisiana jurisprudence has never held that consecutive sentences are necessarily excessive. State v. Williams, 445 So.2d 1171 (La.1984); State v. Littleton, 436 So.2d 500 (La.1983). Although La.C.Cr.P. art. 894.1 provides the trial court with general sentencing guidelines, additional factors must be considered to determine whether or not the sentence imposed in the instant case is excessive. This is because of the fact that the imposition of consecutive sentences for a conviction arising out of a single course of criminal conduct requires particular justification. State v. Williams, supra; State v. Ortego, 382 So.2d 921 (La.1980); cert. denied 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Lewis, 430 So.2d 1286 (La.App. 1 Cir.1983) Writ denied 435 So.2d 433 (La.1983). Consecutive sentences are justified when the offender poses an unusual risk to the safety of the public. State v. Sherer, 437 So.2d 276 (La.1983); State v. Lewis, supra.

Additionally, when imposing consecutive sentences for same transaction crimes, factors to be considered include those enumerated under La.C.Cr.P. art. 894.1, as well as consideration of defendant's firstoffense status, dangerousness of offense, harm done to victim, potential for rehabilitation, and the public's safety. State v. Ashley, 436 [463] So.2d 794 (La.App. 2 Cir.1985); State v. Tomlin, 478 So.2d 622 (La.App. 2 Cir.1985).

State v. Duvio, supra at p. 824.
In State v. Thomas, 604 So.2d 52 (La.App. 5th Cir.1992), the trial judge sentenced defendant *1203 to serve thirty years at hard labor on two counts of armed robbery and twenty years at hard labor on the attempted armed robbery count, to run consecutively for a total of eighty years. On appeal, defendant complained that the consecutive sentences were not justified and the overall sentence of eighty years was constitutionally excessive in light of the fact that defendant had only one prior felony conviction, he did not appear to be a hardened criminal, and the episode was not unusually violent for an armed robbery. This court upheld the consecutive sentences, stating as follow:
The defendant was convicted of two counts of armed robbery and one count of attempted armed robbery. The maximum sentence he could have received could have been up to 247 years. Although the trial judge did not elaborate on the reasons for the sentence; he did review the fact that the defendant had arm-robbed two females and attempted to arm-rob a third female. That he had put three lives in jeopardy and was involved in a chase in which shots were fired and other lives were placed in jeopardy. Armed robbery is a serious offense and here the defendant received less than one-third of the maximum sentence. Accordingly, we do not find the sentence excessive.

State v. Thomas, supra at p. 61.
In the present case, although the trial judge could have elaborated more on the reasons for the sentences imposed, the record, including the brief reasons given by the trial judge, support the sentences imposed even if they do deviate from the Guidelines.
The facts disclosed that the defendant was armed with a sawed-off shotgun in the commission of the armed robberies. The victims were placed in very grave danger and could have easily been killed. Armed Robbery is a most serious crime and should be dealt with very sternly. Consecutive sentences under these circumstances are not excessive at all.

ASSIGNMENT OF ERROR NO. THREE
Also assigned as error are any and all errors patent on the face of the record.

DISCUSSION
An error patent review was done in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). A review of the record reveals that the hard labor sentencing form is inconsistent with the sentencing transcript. While the sentencing form reflects that defendant was given credit for time served, the transcript does not so reflect. It is well established that where there is a discrepancy between the minutes and transcript, the transcript must prevail. State v. Lynch, 441 So.2d 732 (La.1983). According to LSA-C.Cr.P. art. 880, the court, when it imposes sentence, shall give a defendant credit for time served. Since art. 880 is mandatory in its language, defendant must be given credit for time served, despite the fact that it is not specifically stated in the transcript. Accordingly, we order the sentence amended to give credit for time served.

DECREE
For the foregoing reasons, the conviction is affirmed and the sentence is amended to give credit for time served and as amended, is affirmed.
AMENDED AND AFFIRMED AS AMENDED.