650 So.2d 291 (1995)
STATE of Louisiana
v.
Crescenico WRIGHT.
No. 94-KA-682.
Court of Appeal of Louisiana, Fifth Circuit.
January 18, 1995.
*292 Anthony Falterman, Dist. Atty., Convent, for plaintiff/appellee, State of La.
Arthur Harris, Sr., New Orleans, for defendant/appellant, Crescenico Wright.
Before BOWES, GAUDIN and GRISBAUM, JJ.
BOWES, Judge.
Defendant, Crescenico Wright, was convicted of armed robbery in violation of La. R.S. 14:64 and was sentenced to forty (40) years at hard labor without benefit of probation, parole or suspension of sentence. Defendant now appeals from both his conviction and his sentence. We find no reversible error in defendant's conviction and sentence. Consequently, we affirm both.

FACTS
On August 17, 1991, Kirk Spencer, his girlfriend, Saudia Dolliole, their young daughter and Joseph Whitten drove from New Orleans to Lutcher. Spencer drove to the Dew Drop Inn, a bar in the area owned by defendant's family. There he saw defendant and greeted him, "My boy, Cress." Defendant returned the greeting and called Spencer by his first name. Spencer asked defendant about a "hustle" for money. Defendant said he believed that Leray Louque's father, who "keeps a lot of money", might be home. Spencer left the vehicle and talked privately with defendant. The men returned and entered vehicle.
Defendant directed Spencer to drive to Buck's Tavern, a bar in the area owned by the Louque family. When they arrived, defendant said that he did not see the truck of Leray Louque, the intended victim. Defendant then provided directions to the Louque residence. However, when they arrived at the residence, there were several parked cars and defendant advised Spencer to leave. Spencer suggested buying flowers and delivering them to the Louque residence as a means to enter the house for the robbery. Defendant led Spencer to a local florist. However, when the group arrived at the flower shop, it was closed.
Defendant then told Spencer that Leray Louque was due to arrive at Buck's Tavern at that time. They rode around the block and arrived at the bar. Defendant told Spencer and Whitten that he would sit next to Leray Louque in the bar; then, he exited the vehicle and went inside. The remaining group drove around the block and stopped near the bar. The men got out of the vehicle. Dolliole was told to wait at that location. Spencer entered Buck's Tavern, followed by Whitten.
Inside, defendant was sitting at a table with Leray Louque, who was counting money and receipts and placing them in a bank bag. Defendant was filling out a betting sheet for a football game. At first Spencer appeared to want to purchase something, but then he approached the table and grabbed the bank bag. Louque resisted and Spencer shot Louque in the side, grabbed the bag and fled the bar. Whitten followed.
When the two men ran outside, they discovered that Dolliole was not waiting for them as planned. Spencer and Whitten commandeered a vehicle from others at gunpoint and drove down a street. Upon reaching the end of this street, the men saw Dolliole and *293 exited the vehicle they were in and entered the automobile with Dolliole. They returned to New Orleans.
When the police arrived, they interviewed witnesses located at the bar, including defendant who was still there. The victim was rushed to a hospital, but died two days later of the gunshot wound.
At trial, defendant testified and denied any involvement with the offense. He contended that he did not know Spencer or the others. The defense's theory was that the victim was a drug user, had purchased drugs just prior to the incident and that the shooting was connected to the victim's narcotics purchase. Defendant further contended that on the day of the robbery he was with family members buying items related to the family's bar. Several family members testified that defendant was with them in LaPlace, Louisiana until about 4:50 p.m., when they returned home.
On appeal, the defendant contends that the trial court erred in allowing into evidence testimony of other crimes. Defendant also alleges that his sentence of forty (40) years is excessive.

ASSIGNMENT OF ERROR NUMBER ONE

EVIDENCE OF OTHER CRIMES
In his first assignment of error, defendant alleges that the trial court committed reversible error in allowing the state to introduce evidence of other crimes.
The defendant presented the testimony of Kenneth Cureau, a former St. Charles Parish Sheriff deputy and at the time of trial an auxiliary sheriff deputy, as evidence of his good character. Mr. Cureau testified on cross-examination, and over objection by defense counsel, as follows:
[ASSISTANT DISTRICT ATTORNEY]:
Q. Now, do you know that the defendant's family own [sic] the Dew Drop Inn?
A. Yes; that's correct.
Q. Have you ever been to the Dew Drop Inn?
A. A few times.
Q. Before [sic] business?
A. For business and, maybe once or twice just to go in the place.
Q. Okay. Now, were you ever involved in narcotics when you were a police officer?
A. Yes. I was.
Q. Now, how long, or how often did you every [sic] frequent the Dew Drop Inn? How many times have you been in there?
A. As working.
Q. Yeah?
A. Kind of hard to say; it's been quite a few times.
Q. Now, being a police officer involved in narcotics did you at any time have intelligence that there were drug activity in the Dew Drop Inn?
MR. HARRIS [DEFENSE ATTORNEY]:
I object, you Honor, that's hearsay.
MR. BRINDISI [ASSISTANT DISTRICT ATTORNEY]:
Judge, I'm asking of his own personal knowledge.
MR. HARRIS:
That's hearsay.
MR. BRINDISI:
Judge, it goes to the character of the defendant.
MR. HARRIS:
It's still hearsay, your Honor.
THE COURT:
Without saying what anyone told you, I'll permit him to answer it.
BY MR. BRINDISI:
Q. Do you know, being an narcotic's officer, if there were [sic] any drug activity going on in the Dew Drop Inn?
A. Yes, I do.
Q. You did, good. And who runs the Dew Drop Inn?
A. It was the Wright family.
Q. And does that include Crenscenico?
A. That's correct.
Q. Thank you, officer. I have no further questions.
*294 On appeal, defendant argues that this testimony constitutes inadmissible other crimes evidence under La.C. of Evidence art. 404(B)(1). La.Code of Evidence art. 404(B)(1) reads as follows:
Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Comment (k) to this article reads as follows:
The first sentence of Paragraph B of this Article is not intended to change the law. See State v. Prieur, 277 So.2d 126 (La.1973); Art. 1103, infra. Although the second sentence of Paragraph B contains a longer list of purposes for which evidence of other crimes is admissible than that found in former R.S. 15:445-446,[1] it generally accords with the rules actually applied by the Louisiana courts. State v. Kahey, 436 So.2d 475 (La.1983). [footnote added].
The state, within a reasonable time before trial, must furnish in writing to the defendant a particularized statement of the other acts or offenses it intends to offer, specifying the exception to the general exclusionary rule upon which it intends to rely for their admissibility. Evidence of other acts of misconduct is not generally admissible. The introduction of such evidence merely to prove the defendant is a "bad man" involves constitutional problems because of the danger that a defendant may be tried for a charge of which he has no notice, for which he is unprepared, and which unfairly prejudices him in the eyes of the jury. An exception to the general rule of inadmissibility exists when the state seeks to introduce other crimes evidence for some substantially relevant purpose (other than to show that the defendant is guilty because he is a man of general criminal character). Once a determination is made that the other crimes evidence is presented for one of these "substantially relevant" purposes, the court must balance the probative value of the evidence against its prejudicial effect before admitting the evidence. State v. Kahey, 436 So.2d 475, 488 (La.1983); State v. Soler, 93-1042 (La. App. 5th Cir. 4/26/94), 636 So.2d 1069, writ denied, 94-0475 (La. 4/4/94), 637 So.2d 450, State v. Walker, 576 So.2d 1202, 1204 (La. App. 5 Cir.1991). The only exception to this notice requirement relates to evidence of offenses which are part of the res gestae, or are used to impeach defendant's testimony. State v. Germain, 433 So.2d 110, 117 (La. 1983); State v. Prieur, 277 So.2d 126 (La. 1973); State v. Soler, supra.
At trial, the assistant district attorney stated that the object of the testimony "goes to the character of the defendant." Thus, the state was attempting to offer this testimony to rebut testimony about defendant's good character. However, we find that the very brief reference to "drug activity going on in" the bar owned by defendant and his family, without more specifics and in the context of the other questions, does not constitute evidence of other crimes. Further, there was no reference to actual criminal activity by defendant himself. Thus, this testimony was not evidence of another crime and the state was not required to give notice of this testimony. See State v. Soler, supra. See also State v. Landry, 502 So.2d 281, 288-289 (La. *295 App. 3 Cir.), writ denied, 508 So.2d 63 (La. 1987). Moreover, the testimony referred to herein appears to be an attempt to impeach the testimony of defendant's brother, who testified that no drug transactions occurred at the Dew Drop Inn.
We find that the testimony of Mr. Cureau does not constitute evidence of other crimes and, therefore, the trial court did not err in allowing the introduction of this testimony.

ASSIGNMENT OF ERROR NUMBER TWO

EXCESSIVE SENTENCE
In this assignment, defendant contends that the trial court should have imposed a sentence within the recommended range of incarceration. He argues that there were several mitigating factors that support following the sentencing guidelines recommendation of 60-90 months incarceration. In his brief, he concedes that a few of the listed aggravating factors may have been applicable, but argues that they do not support such a deviation which resulted in a sentence of forty years. Further, he argues that the trial court did not provide an adequate statement of its reasons for the sentence and deviation upward from the suggested range.
In State v. Smith, 93-0402 (La. 7/5/94), 639 So.2d 237, 242 (La.1994) reh. denied, 93-0402 (La. 9/1/94), one of the most recent cases involving sentencing guidelines, the Louisiana Supreme Court held that the "Guidelines are advisory in nature." That Court stated:
There is no codal or statutory requirement for record justification by the trial judge of his decision to deviate from the Guidelines and impose a sentence other than that which is suggested by the Guidelines. The only mandatory aspects of the statutory scheme are contained in La.Code Cr.P. art. 894.1, which requires the trial judge to consider the Guidelines, and to state for the record the considerations taken into account and the factual basis for the sentence imposed. The requirements of La.Code Cr.P. art. 894.1 attach whether the trial judge chooses to adhere to or instead deviate from the sentence recommended by the Guidelines.
Furthermore, because the Guidelines are not mandatory, where the trial judge adheres to the requirements of La.Code Cr.P. art. 894.1, and imposes a sentence within the statutory range, an appellate court is limited to a traditional review of the sentence for constitutional excessiveness, regardless of whether the trial court imposed sentence pursuant to the Guidelines or outside of the range called for by the Guidelines. (Emphasis supplied).
There is no dispute that the grid cell from the sentencing guidelines for this case is 1G, which results in a recommended sentence of 60-90 months, or 5 to 7½ years for the typical case, an offense committed without aggravating or mitigating circumstances. LAC 22:IX, Chapter 2, Section 209A(1). Thus, the sentence of 40 years was beyond the recommended sentencing range under the guidelines, but within the statutory range for the offense of armed robbery. La.R.S. 14:64.
Other applicable jurisprudence regarding excessive sentence has been set forth by this Court as follows:
The courts are prohibited from imposing cruel, excessive, or unusual punishment by Article I, Section 20 of the Louisiana Constitution of 1974. Sentences which are "grossly out of proportion to the severity of the crime" or "nothing more than the purposeless and needless imposition of pain and suffering" are excessive. State v. Brogdon, 457 So.2d 616, 625 (La.1984), cert. denied, Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Studivant, 531 So.2d 539 (La.App. 5th Cir.1988). Even sentences which are within statutory limits may violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tyler, 524 So.2d 239 (La.App. 5th Cir. 1988).
State v. Jones, 559 So.2d 492, 495 (La.App. 5 Cir.1990), writ denied, 566 So.2d 981 (La. 1990); State v. Hill, 628 So.2d 108, 109-110 (La.App. 5 Cir.1993).
Furthermore,
In reviewing a sentence for excessiveness the appellate court must consider the *296 punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing sentence. A sentence within statutory limits will not be set aside as excessive absent a manifest abuse of discretion. State v. Davis, 449 So.2d 452 (La.1984); State v. Lynch, 512 So.2d 1214 (La.App. 5 Cir. 1987).
The court should consider three factors in reviewing a judge's sentencing discretion 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Telsee, 425 So.2d 1251 (La.1983); State v. Smith, 520 So.2d 1252 (La.App. 5 Cir.1988), writ denied, 523 So.2d 1320 (La. 1988).
State v. Hill, supra at 110.
In this case, the trial judge provided written reasons for its sentence and stated that he believed that there were sufficient aggravating circumstances present to warrant an upward deviation from the Sentencing Guidelines. The court noted several aggravating factors listed in the guidelines, including the murder of the victim, the economic loss to the victim's family which occurred when the bar did not reopen after the victim's death, the use of a dangerous weapon in the robbery, the risk of death or injury to other persons in the bar during the robbery, and defendant's involvement in the offense as the organizer and person possessing special knowledge of the community and the victim. The judge also noted he "carefully considered" defendant's statement that he was innocent and considered "his background, his youthfulness, and his lack of a criminal record." The sentencing court also considered letters from persons requesting leniency and from others requesting the maximum sentence.
In State v. Selders, 520 So.2d 1227 (La. App. 5 Cir.1988), this Court found that a 30 year sentence for a first offender convicted of armed robbery was appropriate under the circumstances. Herein, the sentence of 40 years, was less than one-half the maximum sentence which could have been imposed for this armed robbery in which a person was killed.
Accordingly, because of the matters considered by the trial judge in his excellent "Reasons for Sentence," we are of the opinion that the sentence imposed on defendant does not appear to be out of proportion to the seriousness of the crime; nor does the sentence appear to constitute the needless imposition of pain and suffering.
Therefore, we find the trial judge complied with the sentencing guidelines and the latest pertinent expression of the Supreme Court in Smith, supra. For these reasons we hold that the sentence imposed in this case is not excessive. We therefore find that this assignment lacks merit.

ERRORS PATENT
Finally, we have examined the record for patent error in accordance with State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) and find the following error.
The sentencing transcript and the minute entry do not show that the trial court gave defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence; however, such an allowance is mandatory. La.C.Cr.P. art. 880; State v. Sherman, 532 So.2d 908 (La.App. 5 Cir.1988). Accordingly, we amend the sentence to give defendant such credit.
Second, La.C.Cr.P. art. 930.8 dictates that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. In this case, the transcript of sentencing fails to reflect that the defendant was so informed. This defect has no bearing on whether the conviction is proper and thus is not grounds to reverse the sentence or to remand the case for resentencing. La.C.Cr.P. art. 921; State v. Corley, 617 So.2d 1292 (La.App. 3 Cir.1993). To satisfy the notice requirements, the district court is directed to inform defendant of the provisions of article 930.8 by sending appropriate written notice to the defendant *297 within ten days of the rendition of this opinion and to file written proof in the record that the defendant received the notice. State v. Kershaw, 94-141 (La.App. 5 Cir. 9/14/94) 643 So.2d 1289.
For the above discussed reasons, the conviction of defendant is affirmed. The sentence is amended to reflect credit for time served and, as amended, is affirmed. The district court is instructed to give the defendant the notice required by La.C.Cr.P. art 930.8.
CONVICTION AFFIRMED; SENTENCED AMENDED AND AFFIRMED WITH INSTRUCTION.
NOTES
[1] La.R.S. 15:445 provides as follows:

In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction.
La.R.S. 15:446 further provides:
When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged.